# United States Court of Appeals

## FOR THE EIGHTH CIRCUIT

_____

No. 00-3907

_____

| | | |
|---|---|---|
| United States of America, | * | |
| | * | |
| Appellee, | * | |
| | * | Appeal from the United States |
| v. | * | District Court for the |
| | * | Eastern District of Missouri. |
| James Borders, | * | |
| | * | |
| Appellant. | * | |

_____

Submitted: September 11, 2001

Filed: November 1, 2001

_____

Before MCMILLIAN, BEAM, and HANSEN, Circuit Judges.

_____

BEAM, Circuit Judge.

Defendant James Borders was convicted by a jury of conspiracy to distribute cocaine base, in violation of 21 U.S.C. §§ 841(a)(1) and 846. The district court[1] sentenced him to life imprisonment under 21 U.S.C. § 841(b)(1)(A). On appeal, Borders, who is a member of a racial minority, argues that the court abused its discretion when it failed to voir dire the all-white venire as to possible racial bias, thus violating his right to due process. He further contends that the court erred in

_____

[1]The Honorable Rodney W. Sippel, United States District Judge for the Eastern District of Missouri.

failing to instruct the jury that drug quantity was an essential element of the offense. Because we find his arguments to be without merit, we affirm.

In its Order Setting Forth Trial Procedures in Criminal Cases, the district court outlined its procedure for jury selection. Prior to trial, although apparently not by the date directed to do so, defense counsel proposed a voir dire question as to whether any venire member would "in any way be affected in the judgment of this case based upon the race, religion or nationality of any of the witnesses or Defendant in the case."

At voir dire, the court asked venire members various questions regarding impartiality and biases generally, but not specifically about racial or ethnic prejudices. After the court had finished its inquiries and given both sides the opportunity to ask follow-up questions, defense counsel asked that such inquiry be made, and indicated that he thought one of the proposed questions he submitted prior to trial "may have related to race." The court informed defense counsel that it did not recall that question, that defense counsel had missed his opportunity to have the court ask such general questions, and that it would not be fair to the government to make the inquiry at that stage of voir dire.

Borders has made no allegations of racial undercurrents or strife related to this matter, nor of any conduct during trial that carried racial implications.

The indictment charged Borders with conspiracy to distribute more than fifty grams of cocaine base. Although the district court did not instruct the jury that drug quantity is an essential element of the offense, on the verdict form the court required the jury to return a special finding in response to the question, "Do you, the jury, unanimously find that the government has established beyond a reasonable doubt that the amount of cocaine base involved in the offense charged in the Indictment was fifty (50) grams or more?" The jury found that the essential elements of the offense

-2-

had been proven beyond a reasonable doubt and responded affirmatively to the question posed in the verdict form.

Constitutional parameters govern the questioning of prospective jurors about racial or ethnic bias. Rosales-Lopez v. United States, 451 U.S. 182, 189 (1981) (plurality). Still, a trial court's failure to inquire as to prospective jurors' ethnic or racial prejudices is constitutionally infirm only if ethnic or racial issues are inextricably intertwined with conduct of the trial, or if the circumstances in the case suggest a significant likelihood that racial prejudice might infect the defendant's trial. Llach v. United States, 739 F.2d 1322, 1332 (8th Cir. 1984). Only when there are such "substantial indications of the likelihood of racial or ethnic prejudice affecting the jurors in a particular case does the trial court's denial of a defendant's request to examine the jurors' ability to deal impartially with this subject amount to an unconstitutional abuse of discretion." Rosales-Lopez, 451 U.S. at 190; see also, e.g., Ham v. South Carolina, 409 U.S. 524, 527 (1973) (finding in drug case that the Fourteenth Amendment required the judge to interrogate jurors upon the subject of racial prejudice when the defendant had been known locally for his work in civil rights activities, his basic defense was that law enforcement officers were out to get him for his civil rights activities, and that prior to the trial judge's voir dire examination of prospective jurors, defense counsel requested the judge to ask questions relating to possible racial prejudices).

However, in exercising its supervisory authority over the federal courts, the Supreme Court requires that, in certain circumstances, questions fashioned to discover potential jurors' racial prejudice be asked even if such inquiry is not constitutionally mandated. Rosales-Lopez, 451 U.S. at 190. The Court has determined that where substantial indications of prejudice are lacking–and constitutional concerns are therefore not implicated–it is still best to allow defendants to decide whether they want an inquiry into racial or ethnic prejudice in order to avoid the appearance of injustice. Id. at 190-91. In this nonconstitutional context,

failure to honor a defendant's request for such inquiry amounts to reversible error where the circumstances of the case indicate there is a reasonable possibility that racial or ethnic prejudice might have influenced the jury. Id. at 191. For instance, "federal trial courts must make such an inquiry when requested by a defendant accused of a violent crime and where the defendant and the victim are members of different racial or ethnic groups." Id. at 192. Yet, the decision as to whether the total circumstances suggest a reasonable possibility that racial or ethnic prejudice will affect the jury lies primarily with trial courts, subject to appellate courts' case-by-case review. Id.

In this supervisory context, inquiry into racial or ethnic prejudice is not necessarily required where the defendant is charged with a non-violent, victimless crime. Llach, 739 F.2d at 1333. But see Ham, 409 U.S. at 525-27 (finding the Constitution required such inquiry in drug case where racial issues were at stake and defendant had asked for inquiry). Even so, we still consider the trial court's efficacy in reasonably ensuring that such prejudice would have been discovered had it been present. Llach, 739 F.2d at 1333. If the trial court conducted voir dire so as to eliminate a reasonable possibility that racial or ethnic prejudice might influence jurors' evaluation of the evidence, there is no reversible error. Id.

In this matter, the voir dire spawned no reversible error, constitutional or otherwise. Borders has not argued that the government's case or his defense raised issues related to racial or ethnic prejudice, or that trial conduct was intertwined with such issues. Cf. Rosales-Lopez, 451 U.S. at 190, 192; Llach at 1332. He merely submits a general claim that he was entitled to inquire into potential prejudices. When defense counsel asked the district court to make this inquiry at voir dire, his only concern was that Borders is black and the prospective jurors were white. However, "[t]here is no constitutional presumption of juror bias for or against members of any particular racial or ethnic groups." Rosales-Lopez, 451 U.S. at 190.

-4-

We therefore find no special circumstances of constitutional proportion at stake. Id. at 190, 192.

Consequently, we look to whether the external circumstances of this case raised a reasonable possibility that racial or ethnic prejudice would influence the jury's evaluation of the evidence. Id. at 192-93. As was the situation in Llach, Borders was charged with a non-violent, victimless[2] crime, and we find no risk of an appearance of injustice. See 739 F.2d at 1332-33. We therefore look at measures the district court took to reasonably ensure jurors' impartiality. Id. at 1333. Although not specifically asking about racial or ethnic prejudices, the court asked jurors whether there were any matters or experiences in their lives that would prevent them "from being completely fair and impartial to both parties;" if there was anyone "who, for any reason, whether or not [the district court] ask[ed] the question, would feel he or she wouldn't want a person listening to his or her case with a feeling about this case that [he or she] ha[d] at [that] time;" and whether there was anyone who could not decide the case based upon the evidence they heard in the courtroom, "and only the evidence they heard in the courtroom," and the law on which the court instructed them.

We are somewhat uncertain as to why the district court refused to honor Borders' request, or why to do so would have been unfair to the government. Cf. Rosales-Lopez, 451 U.S. at 190 ("Determination of an appropriate nonconstitutional standard for the federal courts does not depend upon a comparison of the concrete costs and benefits that its application is likely to entail. These are likely to be slight: some delay in the trial versus the occasional discovery of an unqualified juror who would not otherwise be discovered."); Llach, 739 F.2d at 1333 (indicating "the better practice wold have been to honor [the defendant's] request"); see also Llach, 739 F.2d

---

[2]Llach was a drug prosecution and this court referred to the charges as being for a "victimless" crime. We assume the term was used to note that no victim of the ravages of drug commerce was before the jury during the selection process.

at 1331 (cautioning the government that a prosecutor "'is the representative not of an ordinary party to a controversy, but of a sovereignty whose obligation to govern impartially is as compelling as its obligation to govern at all; and whose interest, therefore, in a criminal prosecution is not that it shall win a case, but that justice shall be done'") (citation omitted). Instead of resolutely adhering to its procedural template, we think the court would have been prudent to specifically inquire into the issue of prejudice, thus averting this issue for appeal. All the same, given its general inquiries and the circumstances of the case, we cannot say that its refusal to honor Borders' request created a reasonable possibility that the jury's decision might be influenced by prejudice, or that the court abused its discretion in failing to do so. Llach, 739 F.2d at 1333.

Next, we address Borders' claim that his sentence contravenes Apprendi v. New Jersey, 530 U.S. 466 (2000). In Apprendi, the Supreme Court held that any fact, other than a prior conviction, that increases a penalty for a crime beyond the prescribed statutory maximum must be charged and proven beyond a reasonable doubt. 530 U.S. at 490. Here, the indictment alleged drug quantity, the jury made a special finding of drug quantity beyond a reasonable doubt, and Borders' sentence is within the range allowed by that finding. Borders therefore received the Fifth and Sixth Amendment protections required by Apprendi. See United States v. Sheppard, 219 F.3d 766, 769 (8th Cir. 2000), cert. denied, 121 S. Ct. 1208 (2001); see also United States v. Aguayo-Delgado, 220 F.3d 926, 934 (8th Cir.) (finding that sentences within the statutorily authorized range do not violate Apprendi),[3] cert. denied, 531 U.S. 1026 (2000).

The conviction and sentence are affirmed.

---

[3]We decline Borders' invitation to reconsider Aguayo-Delgado. United States v. Reynolds, 116 F.3d 328, 329 (8th Cir. 1997) ("One panel may not overrule another.").

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.