# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 00-2784EM

_____

United States of America,                   *
                                            *
              Appellee,                      *
                                            *   On Appeal from the United
       v.                                    *   States District Court
                                            *   for the Eastern District
                                            *   of Missouri.
Levorn Evans,                                *
                                            *
              Appellant.                     *

_____

Submitted: January 15, 2002

Filed: April 3, 2002

_____

Before LOKEN, RICHARD S. ARNOLD, and FAGG, Circuit Judges.

_____

RICHARD S. ARNOLD, Circuit Judge.


Appellant Levorn Evans appeals his conviction of multiple counts relating to transporting individuals in interstate commerce for prostitution in violation of the Mann Act, 18 U.S.C. §§ 2421–2423, money laundering, 18 U.S.C. § 1956, and conspiracy to commit those offenses. He also raises several sentencing issues. Mr. Evans was tried and convicted along with five codefendants, but his appeal was severed from, and follows, theirs. As a result, this Court, in its decision involving those codefendants, already has had the opportunity to address some of the legal arguments that Mr. Evans now raises. See United States v. Evans, 272 F.3d 1069 (8th

Cir. 2001) (upholding convictions of all five defendants but remanding two for resentencing on several counts under earlier version of statute). For the reasons that follow, we affirm Mr. Evans's conviction and sentence in their entirety.

## I. Background

Mr. Evans was convicted of being part of an extensive interstate conspiracy—based in Minneapolis, Minnesota—involving the recruitment, transportation, control, and abuse of prostitutes. The conspiracy began in the early 1980s and lasted until the time of his and his codefendants' arrest in 1999. The defendants are all relatives. Levorn Evans, 52 years old at the time of trial, Clem Evans, 53, Monroe Evans, 50, and Johnny Lee Evans, 46, are brothers. Terrance Roberts, 26, is the son of Monroe Evans, and Derry Evans, 28, is a nephew of the brothers. The facts of the case will be further stated as relevant to the points urged on appeal.

Following a two-week jury trial, the defendants were found guilty on March 27, 2000. The District Court[1] entered final judgment on the verdicts. The other defendants appealed, and this appeal followed.

## II. Discussion

Levorn Evans was convicted under the Mann Act, 18 U.S.C. § 2422(a), of two counts of knowingly persuading, inducing, or enticing an individual to travel in interstate commerce to engage in prostitution; under 18 U.S.C. § 2423(a), of three counts of transporting an individual under the age of eighteen in interstate commerce with the intent that the individual engage in prostitution; and under 18 U.S.C. § 371,

---

[1]The Hon. Jean C. Hamilton, Chief Judge, United States District Court for the Eastern District of Missouri.

of conspiracy to violate the Mann Act. He also was convicted under 18 U.S.C. § 1956(a)(1)(A)(i) of two counts of money laundering; under 18 U.S.C. §§ 1956(a)(1)(B)(i) and 2 of money laundering; and under 18 U.S.C. § 1956(h) of conspiracy to launder money.

Following Levorn Evans's conviction, the District Court sentenced Mr. Evans to 45 years in prison (540 months). Based on a total offense level of 38 and a criminal history category of IV, the imprisonment range under the Sentencing Guidelines was 324 to 405 months. From the high end of the range, the Court departed upward by 135 months.

Mr. Evans's arguments fall into two categories: first, arguments made by his codefendants and considered in their consolidated appeal, in which there are no facts that are unique to Mr. Evans; second, arguments either involving facts that are unique to Mr. Evans or that were not made by his codefendants at all. Regarding arguments in the first category, because we so recently considered these arguments, and because there is nothing in these arguments that distinguishes Mr. Evans's case from those of his codefendants, we find our prior reasoning persuasive. And, in any case, we are not free to disregard a previous panel opinion.

## A. Arguments Considered in Evans

Mr. Evans argues that juror misconduct infected the trial sufficiently to render the outcome unreliable. He argues that the District Court erred in not granting a mistrial or removing certain jurors despite evidence that: (1) jurors discussed the case prior to the close of the case with each other and with non-jurors; (2) jurors read and watched news reports about the case; (3) jurors obtained and read information not introduced at trial, specifically the RiverFront Times, a local newspaper referenced during the trial; (4) a juror could not affirm that he would remain fair and impartial; (5) jurors expressed bias against the defense attorneys; and (6) a juror slept during the

trial proceedings. Mr. Evans moved the District Court for a mistrial with regard to arguments 1–3, so these arguments are reviewed for abuse of discretion. See Evans, 272 F.3d at 1087. Because Mr. Evans failed to object or opted out of an objection with regard to arguments 4–6, these arguments are reviewed for plain error. See Evans, 272 F.3d at 1080.

Each of these arguments was also made by at least one of his codefendants. In Evans, we emphasized that district courts have broad discretion in handling allegations of juror misconduct, and we noted that, in this case, the Court had stricken one juror from the panel, and the remaining jurors had not been exposed to extrinsic information relating to a substantive issue at trial. We find this reasoning persuasive and binding. 272 F.3d at 1078-80 (addressing argument 4), 1087-88 (addressing arguments 1–3, 5–6). Therefore, we conclude that the District Court neither abused its discretion nor committed plain error.

Mr. Evans argues that the District Court erred by allowing the testimony of Sergeant Andrew Schmidt, an expert witness for the government, on the grounds that there was no hearing to determine his reliability and qualifications and no showing that he was in fact credible or reliable. The government did disclose Sergeant Schmidt's qualifications, education, training, and credentials, and the parties briefed and argued before the District Court the issue of whether he should be allowed to testify. The District Court did not abuse its discretion in allowing Sergeant Schmidt to testify. Evans, 272 F.3d at 1094.

Mr. Evans argues that three jury instructions were defective and failed to provide adequate direction to the jury. Two of these instructions will be discussed here, and the third, because it depends on facts unique to Mr. Evans, will be discussed below. Because Mr. Evans failed to object to these instructions at trial, they are reviewed for plain error. Mr. Evans contends, first, that the Court gave conflicting instructions regarding the mental element for money laundering, resulting in the

omission of the required element that the defendant knew that the money being transferred was from the proceeds of an unlawful activity. This argument is without merit. The Court's general knowledge instruction, given as part of the Mann Act instruction, does not conflict with the Court's specific knowledge instruction, which pertains to the money-laundering statute; and these instructions were clear in context. Evans, 272 F.3d at 1086-87. Second, Mr. Evans contends that the Court's failure to specify the names of the victims for each of the Mann Act counts resulted in jury confusion and, therefore, was plain error. This argument also is without merit. Evans, 272 F.3d at 1084.

Mr. Evans argues that the District Court violated the Double Jeopardy Clause by sentencing him both for violations of the Mann Act and for money laundering. He argues that because the money laundering statute requires the use of proceeds from another illegal activity—here, Mann Act violations—those violations are swept into the money-laundering convictions as lesser included offenses. This argument is without merit. Evans, 272 F.2d at 1088.

## B. Arguments Unique to Levorn Evans

Mr. Evans also makes a number of arguments that his codefendants did not make or that involve facts that are specific to him.

### 1. Challenge to Conviction

Mr. Evans argues that the District Court erred by refusing to sever his trial from the trial of the other defendants. He argues that this refusal caused him prejudice because of the spillover effect of conspiracy evidence. Moreover, he argues, the case was long and complicated, and there was evidence of juror confusion: several jurors stated early in the proceedings that they had trouble separating the defendants, and, during deliberation, the jury sent a note asking, "who is with who?" We review for

abuse of discretion. Because it is rarely improper for conspirators to be tried together, and given the presumption against severing properly joined cases, we hold that the Court did not abuse its discretion. See Evans, 272 F.3d at 1084.

Mr. Evans also argues that the District Court erred by admitting evidence of his violent behavior as direct evidence of the conspiracy. However, he does not point specifically to any particular violent conduct that was improperly admitted. Instead, he contends generally that evidence of "fights," "incidents," "assaults," and "domestic violence" between him and prostitutes constituted uncharged misconduct and improperly permeated the trial. A review of the testimony reveals various specific examples of Mr. Evans's violent treatment of prostitutes, including: (1) repeated assaults, strip searches, and rapes of Brenda Schaper, including a bloody attack on her head, breaking her wrist with a boot, beating her with an electrical cord, and threatening her with a gun to the head; (2) repeated beatings of Tanya Rose May, including striking her ear and causing her to lose hearing for several days; (3) repeated beatings of Bonnie Marie Frazier, including breaking her ribs and beating her until she passed out, and an attempt to burn her face with a hot steam iron. These violent acts are relevant and probative of Mann Act violations because they were done to control and discipline prostitutes, regardless of whether Mr. Evans also had "domestic" relationships with those same prostitutes. The Court did not abuse its discretion. Evans, 272 F.3d at 1083, 1096-97.

Mr. Evans also contends that the District Court erred by admitting evidence of his use of cocaine. He cites to one objection made during the trial, during the testimony of Sandra Welch. Review of this objection is for abuse of discretion, which is particularly broad in conspiracy cases. Evans, 272 F.3d at 1083. Review of any other evidence concerning Mr. Evans's use of cocaine, to which no objection was made, is for plain error. Most of the testimony concerning cocaine usage, including the testimony objected to, involved use by prostitutes alone, use by prostitutes and Mr. Evans together, and fights between Mr. Evans and prostitutes over cocaine. This

evidence is relevant and probative of Mann Act violations because it involves the use of drugs to control prostitutes. The Court did not abuse its discretion.

Mr. Evans contends that a third jury instruction, jury instruction 43, the Court's supplemental money-laundering instruction, was defective in that it omitted the requirement of an effect on interstate commerce. Because Mr. Evans failed to object to the instruction, we review for plain error. Although Mr. Evans is correct that the instruction did omit the requirement of an effect on interstate commerce, and that this omission was error, see Evans, 272 F.3d at 1081, he does not state how he was prejudiced. In other words, he does not identify which, if any, of the transactions for which he was convicted did not actually have an effect on interstate commerce. Because it is clear that the transactions that form the basis for his money-laundering convictions—including the purchase of luxury vehicles used in the prostitution business, the interstate wiring of proceeds, and the purchase of real estate—did in fact affect interstate commerce, we hold that the erroneous jury instruction was harmless, not plain, error. See Evans, 272 F.3d at 1080-82.

## 2. Challenge to Offense Level Calculation

In computing Mr. Evans's offense level for conspiracy to violate the Mann Act, the District Court adopted the probation office's presentence report. In doing so, it applied the guideline base for criminal sexual abuse with regard to victim Brenda Schaper. The base offense level for criminal sexual abuse is 27. U.S. Sentencing Guidelines Manual § 2A3.1 (1998). The Court next determined that the offense was committed by the means set forth in 18 U.S.C. § 2241(a),[2] so it increased the offense

---

[2]That statute reads, in pertinent part, as follows:

§ 2241. Aggravated sexual abuse

(a) By force or threat.—Whoever, in the special maritime and territorial

level by four.  U.S. Sentencing Guidelines Manual §  2A3.1(b)(1) (1998).  The Court then found that a two-level enhancement was proper because Ms. Schaper sustained serious bodily injury.  U.S. Sentencing Guidelines Manual §  2A3.1(b)(4)(B) (1998). Next, the Court determined that because Mr. Evans had a role as an organizer or leader of a criminal activity that involved five or more participants, and was otherwise extensive, a four-level enhancement was appropriate.  U.S. Sentencing Guidelines Manual §  3B1.1(a) (1998).  Finally, the Court added one level as part of the multiple-count adjustment.  U.S. Sentencing Guidelines Manual § 3D1.4 (1998). Thus, the Court arrived at a final offense level of 38.

Mr. Evans argues that the District Court erred in computing his offense level. He argues, first, that the District Court erred by applying the guideline base for criminal sexual abuse, which is 27, rather than the guideline base for promoting prostitution under section 2G1.1, which is 14.  U.S. Sentencing Guidelines Manual §§  2A3.1, 2G1.1 (1998).  He argues that because he was not indicted, tried, or convicted of criminal sexual abuse, the District Court was prohibited from using the guideline base for criminal sexual abuse.  Citing Apprendi v. New Jersey, 530 U.S. 466 (2000), and In re Winship, 397 U.S. 358, 364 (1970), he also argues that the District Court improperly removed the jury from its role as factfinder and erroneously increased his sentence, both in violation of his constitutional rights.  Finally, he again

---

jurisdiction of the United States or in a Federal prison, knowingly causes another person to engage in a sexual act—

(1) by using force against that other person; or

(2) by threatening or placing that other person in fear that any person will be subjected to death, serious bodily injury, or kidnapping; or attempts to do so, shall be fined under this title, imprisoned for any term of years or life, or both.

18 U.S.C. § 2241.

argues that the abuse of Ms. Schaper, which he does not appear to contest as a factual matter, was "domestic violence, not criminal sexual abuse."

The District Court found that there were repeated instances of sexual abuse. Sentencing Transcript at 5. The evidence supports this conclusion. Ms. Schaper testified that following Mr. Evans's abusive attacks on her, he often would attempt to make up by forcing her to have sex with him. Again, whether Mr. Evans's admitted sexual abuse of Ms. Schaper occurred in the context of a "domestic" relationship or not, it still constitutes criminal sexual abuse. The District Court did not err in applying the base offense level for criminal sexual abuse.

Moreover, Apprendi and Winship are inapplicable to Mr. Evans's case. In Apprendi, the Supreme Court held that any fact, other than a prior conviction, that increases a penalty for a crime beyond the prescribed statutory maximum must be charged and proved beyond a reasonable doubt. 530 U.S. at 490. Apprendi does not apply to sentencing factors that increase a defendant's guideline range but do not increase the statutory maximum. Here, Mr. Evans was charged and convicted by a jury on ten separate counts, and he received a sentence under the cumulative statutory maximum for the crimes of which he was convicted. The District Court's application of the Guidelines was not error. See United States v. Borders, 270 F.3d 1180, 1184 (8th Cir. 2001).

At sentencing, the District Court enhanced Mr. Evans's offense level as to victim Tanya Rose May by two levels under U.S. Sentencing Guidelines Manual section 3A1.1(b)(1), finding that she was a vulnerable victim. Mr. Evans now argues, as his codefendants Terrance Roberts, Monroe Evans, and Clem Evans did, that this enhancement was clear error. See Evans, 272 F.3d at 1089-90, 1091, 1095. Like them, he argues that Ms. May was not atypically vulnerable. However, the testimony reflects that when Mr. Evans first met Ms. May in 1997, he was forty-eight years old, and she was sixteen. She was also a runaway who had spent time living in juvenile

facilities.   As the Court noted at sentencing, her age was only one aspect of vulnerability; other factors included her background and lack of parental guidance. Sentencing Transcript at 8.   Thus, despite some commonality between Ms. May and the typical underage victim of the Mann Act, given the deference to the District Court's findings of fact, we hold that the District Court did not clearly err in enhancing the sentence under section 3A1.1(b)(1) for targeting vulnerable victims. See Evans, 272 F.3d at 1089-90, 1091, 1095.

Mr. Evans next argues, as Derry Evans, Terrance Roberts, and Johnny Lee Evans did, that the District Court erred in determining that he was an organizer or leader of a criminal activity that involved five or more participants or was otherwise extensive, so as to warrant a four-point sentence enhancement under U.S. Sentencing Guidelines Manual section 3B1.1 (1998). Evans, 272 F.3d at 1084-85, 1089, 1097. We review for clear error.  Id. at 1097.  All five defendants were part of a large-scale criminal activity involving interstate transportation for prostitution.   Deanna Kirkman, one of Terrance Roberts's prostitutes, testified that, following the arrest of Julia Wilson on state charges of prostitution, she witnessed a meeting involving Mr. Evans and the other defendants concerning a police statement that Ms. Wilson had made implicating the defendants. Ms. May testified that Mr. Evans provided money, as did his brothers, to fund their mother's purchase of a house. She also testified that she wired proceeds from prostitution for Mr. Evans on many occasions. Ms. May also testified that Mr. Evans instructed her to drive Eleana Garcia, one of Derry Evans's prostitutes, on prostitution calls, and Jessica Richardson testified that Mr. Evans hired her to drive Ms. May on prostitution calls. This testimony satisfies the requirement that Mr. Evans be "the organizer, leader, manager, or supervisor of one or more other participants."  U.S. Sentencing Guidelines Manual § 3B1.1, cmt. n.2 (1998). Finally, Annikki Davis testified that Mr. Evans found and recruited her to be a prostitute for his nephew. The District Court did not commit clear error in finding that he was a leader or organizer.  Evans, 272 F.3d at 1084-85, 1089, 1097.

Mr. Evans next contests the District Court's finding that a two-level enhancement was proper due to serious bodily injury to Ms. Schaper. U.S. Sentencing Guidelines Manual § 2A3.1(b)(4)(B) (1998). He argues both that the Court erroneously considered injuries to other victims in enhancing the offense level for injuries to Ms. Schaper, and that the evidence does not support a finding of serious bodily injury. Mr. Evans is correct that the District Court seems to have considered injuries suffered by all of Mr. Evans's victims, Sentencing Transcript at 6-7, and that the injuries suffered by the other three victims (for which no enhancement was sought) were not relevant to the finding of serious bodily injury to Ms. Schaper.

Nevertheless, we review the Court's determination that Ms. Schaper suffered serious bodily injury for clear error, looking only to the injuries suffered by her. There is no error. "Serious bodily injury" is defined as "injury involving extreme physical pain or the protracted impairment of a function of a bodily member, organ, or mental faculty; or requiring medical intervention such as surgery, hospitalization, or physical rehabilitation." U.S. Sentencing Guidelines Manual § 1B1.1, cmt. n.1(j) (1998). Some of the injuries suffered by Ms. Schaper have already been mentioned in the discussion of Mr. Evans's violent behavior. These injuries include his breaking her wrist with a boot, dislocating her shoulder, and a bloody attack on her head with an object, for which she was taken to a hospital, that left her with cuts and bruises. The District Court did not err in enhancing the offense level under section 2A3.1(b)(4)(B).

Mr. Evans contends that the District Court erred by determining that Mr. Evans qualified for four-level enhancements for the use of physical force or coercion against Ms. Frazier and Ms. May. U.S. Sentencing Guidelines Manual § 2G1.1 (1998) ("If the offense involved the use of physical force, or coercion by threats or drugs or in any manner, increase by 4 levels."). He argues that because these women had intimate relationships with him and because they worked as prostitutes before they

met him and after they left him, any force and coercion was not a part of the criminal violations. This contention is without merit. As discussed above, the existence of an intimate relationship between Mr. Evans and his prostitutes hardly serves to mitigate the culpable conduct in which he engaged. As long as the use of physical force was relevant and probative of the Mann Act violations (and it was, as means of controlling and disciplining prostitutes), it can properly be considered as an enhancing factor. Evans, 272 F.3d at 1096-97. Moreover, evidence of the use of physical force and coercion is manifold. The selection of acts discussed ante at 6 suffices. (It should be noted that the offense level with regard to Ms. Frazier was too low to have had any effect on the ultimate guideline range, so reversal with respect to her would not have affected Mr. Evans's sentence.) The District Court did not clearly err.

### 3. Challenge to Criminal History Calculation

In determining Mr. Evans's criminal history category, the District Court adopted the presentence report. In doing so, the Court assessed two guideline points under section 4A1.1(b), for a conviction with a sentence of imprisonment of at least sixty days. U.S. Sentencing Guidelines Manual § 4A1.1(b) (1998). It assessed sixteen guideline points under section 4A1.1(c), for convictions with sentences of imprisonment, excluding stays, of less than sixty days. However, because no more than four points may be added under section 4A1.1(c), the Court reduced the number of applicable points under that section from sixteen to four. U.S. Sentencing Guidelines Manual § 4A1.1(b) (1998). The Court then added two more guideline points after finding that Mr. Evans was on probation when he committed the instant offense. U.S. Sentencing Guidelines Manual § 4A1.1(d) (1998). With a total of eight guideline points, Mr. Evans was placed in criminal history category IV.

Mr. Evans raises a number of arguments. He argues, first, that the presentence report does not indicate that he was represented by an attorney for six of his convictions (all under section 4A1.1(c)). Second, citing section 4A1.2(c)(1), he

argues that the Court inappropriately counted six driving convictions (all under section 4A1.1(c)) for which the terms of imprisonment, excluding stays, were less than thirty days. Third, citing section 4A1.2(a)(2), he argues that two convictions which involved concurrent sentences should have been treated as one conviction. Fourth, he argues that there was no evidence in the presentence report or elsewhere that he was on probation at the time of commission of the instant offenses, so imposition of two points under section 4A1.1(d) was error. Finally, he argues that the Court did its addition wrong, and that he should receive no more than six points in total.

Because no objection was raised in the District Court, our review is for plain error. Mr. Evans's first contention is without merit. Mr. Evans does not contend or present evidence that he was unrepresented in various prior convictions. He simply states that it has not been established that he was represented. For sentencing purposes, once the government has carried its initial burden of proving the fact of a conviction, it is the defendant's burden to show that the conviction was not valid. United States v. Early, 77 F.3d 242, 244-45 (8th Cir. 1996). Mr. Evans has made no showing that his convictions were invalid.

Mr. Evans's second contention appears to have merit but not effect. Even if the six driving convictions are removed from the calculation under section 4A1.1(c), his total under that section would be reduced from sixteen to ten. He would still receive the maximum points allowable under that section, four. Therefore, we do not need to decide the issue, as any error would be harmless.

Mr. Evans's third contention is without merit. The two convictions at issue were for driving violations on June 30, 1990, and for driving violations on August 1, 1990. After each incident, Mr. Evans was arrested. Therefore, the two cases are not "related" for purposes of section 4A1.2, so as to be treated as one sentence. U.S. Sentencing Guidelines Manual § 4A1.2, cmt. n.3 (1998) ("Prior sentences are not

considered related if they were for offenses that were separated by an intervening arrest (i.e., the defendant is arrested for the first offense prior to committing the second offense).").

Regarding Mr. Evans's fourth contention, that he was not under probation at the time of commission of the current offenses, the government responds that Mr. Evans had received various stayed sentences, and he has not established that these stayed sentences were not a form of probation. The government cites no applicable case law for this proposition, however. Section 4A1.1(d) reads: "Add 2 points if the defendant committed the instant offense while under any criminal justice sentence, including probation, parole, supervised release, imprisonment, work release, or escape status." U.S. Sentencing Guidelines Manual § 4A1.1(d) (1998). The application notes to the section indicate that "a 'criminal justice sentence' means a sentence countable under § 4A1.2 . . . having a custodial or supervisory component, although active supervision is not required for this item to apply." U.S. Sentencing Guidelines Manual § 4A1.1(d) cmt. n.4 (1998). Thus, although section 4A1.2(b)(2) states that "'sentence of imprisonment' refers only to the portion [of a sentence] that was not suspended," the term "criminal justice sentence" is not so narrowly defined. In fact, the application note goes on to state that "a term of unsupervised probation would be included" within the definition. U.S. Sentencing Guidelines Manual § 4A1.1(d) cmt. n.4 (1998). Therefore, if a stayed sentence is like a form of unsupervised probation, it should be subject to section 4A1.1(d).

We have found no published decision in our Circuit on this issue, but one unpublished decision draws this analogy. See United States v. Blodgett, 32 F.3d 571, 1994 WL 421756, at *1 (8th Cir. Aug. 15, 1994) (finding section 4A1.1 enhancement appropriate for defendant under stayed sentence), cert denied, 514 U.S. 1042 (1995). Other circuits have tended to agree. See United States v. Burke, 148 F.3d 832, 838 (7th Cir. 1998) (holding that court supervision is criminal justice sentence), cert. denied, 525 U.S. 1031 (1998); United States v. Norman, 129 F.3d 1393, 1401-02

-14-

(10th Cir. 1997) (holding that judgment and sentence with special conditions imposed under Colorado law was criminal justice sentence); United States v. Damon, 127 F.3d 139, 147 (1st Cir. 1997) (holding that defendant was under criminal justice sentence notwithstanding state court's temporary stay of execution of sentences for prior offenses). But see United States v. Kipp, 10 F.3d 1463, 1467 (9th Cir. 1993) (holding that, under Colorado's deferred sentencing scheme, suspended sentence, standing alone without accompanying term of probation, is not criminal justice sentence because it lacks both "custodial component" and "supervisory component").

The question remains whether any of the instant offenses were committed while Mr. Evans was under a stayed sentence. The application notes to section 4A1.1(d) indicate that the term "instant offense" is to be interpreted broadly, referring to "any part of the instant offense (i.e, any relevant conduct)." U.S. Sentencing Guidelines Manual § 4A1.1(d) cmt. n.4 (1998). Considering the length and breadth of the conspiracy in which Mr. Evans was involved, and given this broad definition of "instant offense," Mr. Evans is almost certain to have engaged in relevant conduct during his various periods under stayed sentences. At the very least, on plain error review, he has the burden to establish that he did not engage in relevant conduct during those periods, something which he has failed to do.

In sum, we do not believe the district court's assignment of these two criminal history points amounts to plain error resulting in a miscarriage of justice. See Fritz v. United States, 995 F.2d 136, 137 (8th Cir. 1993), cert. denied, 510 U.S. 1075 (1994). We cannot conclude from the record before us that Mr. Evans's stayed sentences do not qualify as criminal justice sentences or that he did not engage in relevant conduct during those intervals.

The final contention that Mr. Evans raises concerns the calculation of his guideline points. The criminal history computation in the presentence report appears to indicate that Mr. Evans was given four points for his prior convictions and two

points under 4A1.1(d), which should yield a total of six points. A closer reading of the report reveals, however, that he actually received two points under section 4A1.1(b), four points under section 4A1.1(c), and then the two point enhancement under section 4A1.1(d). There was no error.

### 4. Challenge to Upward Departure

Like Terrance Roberts, Monroe Evans, Clem Evans, and Johnny Lee Evans, Levorn Evans argues that the District Court acted unreasonably, abused its discretion, and violated the Double Jeopardy Clause by granting the government's motion for an upward departure of 135 months based on U.S. Sentencing Guidelines Manual sections 5K2.2 (significant physical injury), 5K2.6 (use of a weapon), and 5K2.8 (extreme conduct). The Court explained that each of these bases applied. Sentencing Transcript at 11-13. Moreover, as long as the departure is warranted by any one of these sections, we can sustain the District Court's upward departure. United States v. Johnson, 56 F.3d 947, 958 (8th Cir. 1995). Mr. Evans contends that his case does not fall outside of the heartland of the applicable Guidelines because the Court used section 2A3.1 (criminal sexual abuse) as the base offense and enhanced that base by four levels pursuant to section 2A3.1(b)(1). Citing the application notes to the section, he argues that use of force against the victim, threatening or placing the victim in fear of death or serious bodily injury, rendering the victim unconscious, administering intoxicants or drugs, and using or brandishing a weapon are incorporated into his enhanced offense level, so further departure is impermissible. U.S. Sentencing Guidelines Manual § 2A3.1, cmt. n.1 (1998). However, the question is whether the factors were present to an exceptional degree beyond what the Guidelines contemplate. Koon v. United States, 518 U.S. 81, 96 (1996); Evans, 272 F.3d at 1089.

Regarding significant physical injury, Mr. Evans argues that among his victims Brenda Schaper, Tanya May, Bonnie Frazier, and Sandra Welch, there were no

-16-

hospital stays or permanent disability, so there were no serious injuries. This argument is without merit. There is sufficient testimonial evidence of significant injury to Ms. Schaper (broken wrist, dislocated shoulder, head trauma), Ms. May (temporary hearing loss, cuts and contusions), and Ms. Frazier (a broken rib, facial trauma, and blackened and swollen eyes) as a result of Mr. Evans's physical abuse to satisfy us that the District Court did not abuse its discretion. Regarding use of a weapon, Ms. Schaper testified that Mr. Evans put a gun to her head, and Ms. Frazier testified that Mr. Evans threatened her by putting a hot steam iron to her face. Again, the Court did not abuse its discretion.

Finally, regarding extreme conduct, in addition to the various assaults, assaults with weapons, and sexual assaults described previously, Ms. Schaper testified that Mr. Evans forced her to work as a prostitute up to the seventh month of her pregnancies. He also forced Ms. May to work after being released from the hospital with pneumonia. Lastly, there was testimony regarding Mr. Evans's providing his victims with powder and crack cocaine. We conclude that the District Court did not abuse its discretion in departing upward.

## III. Conclusion

For the foregoing reasons, we affirm the judgment of the District Court in its entirety.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.

-17-