NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 18a0470n.06

Case No. 17-6004

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

FILED
Sep 13, 2018
DEBORAH S. HUNT, Clerk

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | ON APPEAL FROM THE UNITED |
| v. | ) | STATES DISTRICT COURT FOR |
| | ) | THE EASTERN DISTRICT OF |
| TIFFANY A. PRINCE, | ) | KENTUCKY |
| | ) | |
| Defendant-Appellant. | ) | |

BEFORE: WHITE, DONALD, and LARSEN, Circuit Judges.

**BERNICE BOUIE DONALD, Circuit Judge.** Defendant-Appellant Tiffany A. Prince facilitated the purchase of heroin for "B.R." from her dealer. B.R. ingested the drugs immediately after purchase and soon experienced an overdose. Paramedics revived him, and he refused further medical assistance. Prince pleaded guilty to aiding and abetting the distribution of heroin and fentanyl. At sentencing, the district court found that B.R.'s overdose was a "significant physical injury" under the Guidelines and departed upwards. Prince now appeals, arguing that B.R. suffered no significant injury. For the reasons that follow, we **AFFIRM**.

## I.

On September 6, 2016, the victim in this case, B.R., asked Prince to assist him in obtaining heroin. Prince drove B.R. to a co-defendant's home, a location where she had obtained narcotics for personal use in the past. Once there, B.R. gave Prince $40 and she returned with two bindles

of heroin. Prince warned that the drugs were "powerful." At the time, neither knew how prescient Prince's warning was—the heroin was laced with fentanyl. B.R. snorted the drugs. Prince then drove B.R. to a local grocery store.

Once inside the store, B.R. suffered a drug overdose. After falling unconscious, store employees contacted emergency medical services. Seeing emergency responders, Prince left the scene. Upon arrival, medical personnel identified suppressed respiration and diagnosed B.R. accordingly. They provided two doses of Narcan—a medication used to block the effects of opioids in case of overdose. B.R. regained consciousness and his breathing returned to normal. *Id.* B.R. refused further medical attention and left the scene without medical assistance.

Prince and the suppliers were indicted for distributing heroin laced with fentanyl. Prince pleaded guilty to aiding and abetting the distribution of heroin and fentanyl, in violation of 21 U.S.C. § 841(a)(1). Prince's Presentence Investigation Report ("PSR") indicated a criminal history category of V and a total offense level of 10. Her Guideline's range was 21 to 27 months. The PSR also indicated that Prince's conduct caused a "significant physical injury," thus warranting an upward departure under U.S.S.G. § 5K2.2—which Prince timely objected to.

At sentencing, the district court heard testimony from DEA Agent Anderson Muse regarding B.R.'s overdose. Agent Muse confirmed that Prince warned B.R. that the drugs were "pretty powerful" and, based on his review of B.R.'s medical records and interviews with responding paramedics, confirmed that B.R.'s respiration rate was six, and that a respiration rate under eight requires intubation. Agent Muse further stated that the first responders believed that, absent their intervention and administering Narcan, B.R. would have died. The district court found "that a heroin overdose is a significant physical injury for purposes of the guideline" and that "without the administration of Narcan, B.R. would have run the risk of permanent oxygen

deprivation and likely would have died." The court also rejected Prince's argument that § 5K2.2 required a permanent injury and noted that B.R.'s recovery "goes to the extent of the departure, versus the fact that this guideline applies to begin with." Further, it explained that B.R.'s injury was a knowing risk because, "[a]s an addict herself, the defendant knew the potential risk of the heroin" and "she knew the heroin was powerful, and she had warned [B.R.] to be careful."

The court overruled Prince's objection and departed upwardly by three offense levels, which resulted in an effective Guideline range of 30 to 37 months. The court acknowledged that Prince did not act intentionally, but negligently, warranting a less substantial departure and sentenced Prince to 36 months' imprisonment. This timely appeal followed.

Prince now appeals the district court's upward departure under § 5K2.2, arguing that B.R.'s suppressed breathing after overdosing does not constitute "significant physical injury." Instead, Prince argues, B.R.'s overdose—and the effects therefrom—are neither an injury, nor significant, alternatively likening the symptoms to that of a common cold.

**II.**

We review sentencing determinations "under a deferential abuse-of-discretion standard." *Gall v. United States*, 552 U.S. 38, 41 (2007). Our review of a district court's decision to depart upward from the Guidelines is also for abuse of discretion. *See United States v. O'Georgia*, 569 F.3d 281, 287 (6th Cir. 2009). "In reviewing a district court's application of the Sentencing Guidelines, this court must 'accept the findings of fact of the district court unless they are clearly erroneous and . . . give due deference to the district court's application of the guidelines to the facts.'" *United States v. Simmerman*, 850 F.3d 829, 832 (6th Cir. 2017) (quoting 18 U.S.C. § 3742(e)).

Prince argues, however, that determination of the non-defined term "significant physical injury" under § 5K2.2 is a legal interpretation that must be reviewed de novo. But the "abuse-of-discretion standard includes review to determine that the discretion was not guided by erroneous legal conclusions." *Koon v. United States*, 518 U.S. 81, 100 (1996). Thus, we review for an abuse of discretion.

**III.**

The sole issue for us to determine is whether the district court abused its discretion in finding that B.R.'s heroin and fentanyl overdose constituted a "significant physical injury" under § 5K2.2. As the parties briefed, there is surprisingly little instructive precedent to guide our inquiry. There are no opinions—published or otherwise—that directly address this issue from our Circuit. As for our sister circuits, there is a similar dearth of interpretation. Even were we to adopt the reasoning of one of the few cases that have addressed this subject, that reasoning would not be wholly dispositive of the issue before us.

Still, several factors compel us to find that—under the specific facts of Prince's case—the district court did not abuse its discretion in departing upward due to a significant physical injury. We begin with the language of § 5K2.2. As stated, "significant physical injury" is not defined. However, recently, we have determined that "[t]he term 'physical injury' *typically* means 'bodily injury,' which in turn is defined as '[p]hysical damage to a person's body.'" *United States v. Camp*, No. 17-1879, slip op. at 13 (6th Cir. Sept. 5, 2018) (emphasis added) (citing *Black's Law Dictionary* (10th ed. 2014)); *see United States v. Edling*, 895 F.3d 1153, 1158 (9th Cir. 2018) (stating that Guidelines "[p]rovisions that refer to 'physical injury' standing alone use the term, as does Black's Law Dictionary, as synonymous with bodily injury to a person"). In this instance, the language of § 5K2.2 suggests that the drafters were only concerned about injury to a person,

and not some other type of physical injury, such as damage to property. *See* § 5K2.2 (requiring the court to consider "the degree to which [the injury] may prove permanent" and whether "the victim suffer[ed] a major, permanent disability") (stating that "the same considerations apply as in § 5K2.1," which authorizes an upward departure if death resulted). Therefore, "physical injury" is synonymous with "bodily injury" in this context.

The Guideline's commentary elsewhere defines "bodily injury" as "any significant injury; e.g., an injury that is painful and obvious, or is of a type for which medical attention ordinarily would be sought." *See* U.S.S.G. § 1B1.1, cmt. 1(B). The Guideline's commentary also defines elsewhere "*serious* bodily injury" as "injury involving extreme physical pain or the protracted impairment of a function of a bodily member, organ, or mental faculty; or requiring medical intervention such as surgery, hospitalization, or physical rehabilitation." *Id*. at cmt. 1(L). "Significant physical injury," therefore, seems to fall somewhere in between the two.[1] But to answer the question presented in this case, we need not further define the term. Both "significant injury" and "serious bodily injury" include pain or any injury for which medical attention would be sought or is required. Here, we have testimony that supports the necessity of medical attention. While not as intensive or protracted as surgery or hospitalization, the district court heard testimony that, absent emergency intervention and the administration of an opioid suppressant, B.R.'s respiratory rate would have continued to decline, resulting in his death. This testimony was

---

[1] Merriam Webster's online dictionary defines "serious" as "having important or dangerous possible consequences." Merriam-Webster Online, https://www.merriam-webster.com/dictionary/serious (last visited July 2, 2018). Its synonyms include "dangerous, grave, grievous, hazardous, jeopardizing, menacing, parlous, perilous, risky, threatening, unhealthy, unsafe, and venturesome. *Id.* On the other hand, "significant" is defined as "having meaning," with listed synonyms of "big, consequential, earth-shattering, eventful, historic, important, major, material, meaningful, momentous, monumental, much, substantial, tectonic, and weighty." Merriam-Webster Online, https://www.merriam-webster.com/dictionary/significant (last visited July 2, 2018). These definitions intimate that "serious" is more severe than "significant." *See also United States v. Ramirez*, 557 F.3d 200, 207 (5th Cir. 2009) (noting that New Jersey's laws delineate crimes with intent to cause "serious bodily injury" and "significant bodily injury," with the former classified as the greater offense).

sufficient to establish that B.R. suffered a "significant physical injury" and, thus, we will not find an abuse of discretion in its application.

The language in § 5K2.2 evidences an intent to allow for a flexible, factual inquiry into the extent of the increase. Indeed, as briefly mentioned above, § 5K2.2 states that "[t]he extent of the increase ordinarily should depend on the extent of the injury, the degree to which it may prove permanent, and the extent to which the injury was intended or knowingly risked." U.S.S.G. § 5K2.2. Moreover, § 5K2.2 states that when "the victim suffers a major, permanent disability and when such injury was intentionally inflicted, a substantial departure may be appropriate. If the injury is less serious or if the defendant (though criminally negligent) did not knowingly create the risk of harm, a less substantial departure would be indicated." *Id.* Such language strongly implies that, contrary to Prince's argument here, the section is intended to apply where there is an injury that is temporary or unintentional but that such a case warrants a lesser departure. Common sense as to the plain language of the statute demands the same conclusion. In common parlance, a drug overdose would not be an insignificant injury.

Next, we look to any available guiding precedent. Though this is a matter of first impression, all cases provided suggest that the district court did not abuse its discretion in applying the sentence. *See United States v. Roberts*, 670 F. App'x 901 (8th Cir. 2016) (affirming sentence that included upward departure under § 5K2.2 due to two heroin overdoses that required the use of Narcan, albeit where the defendant only argued improper sentencing disparity); *United States v. Pacheco*, 489 F.3d 40, 47 (1st Cir. 2007) (finding that district court did not commit clear error "in finding that significant physical injury resulted from ketamine supplied by the defendant" when victim overdosed, albeit where causation was the only issue and the defendant did not dispute that the victim's injuries were significant).

Finally, as the Government points out, the district court maintained the authority—under 18 U.S.C. § 3553(a)—to give additional weight to the overdose, even if § 5K2.2 did not apply. *See United States v. Hubbard*, 589 F. App'x 809, 811 (8th Cir. 2015). In *Hubbard*, the defendant sold heroin to multiple victims who later overdosed and were revived by paramedics using Narcan. *Id.* at 810. At sentencing, the defendant objected to a departure under § 5K2.2. *Id.* The district court overruled the objection and departed upward three offense levels because both victims were "significantly physically injured as a result of defendant's distribution of heroin." *Id.* (internal citation omitted). However, the district court also stated that "[i]f the Eighth Circuit Court of Appeals does not agree with my interpretation of 5K2.2, then I would vary upward to the same level to reflect that defendant's heroin distribution resulted in an injury involving a substantial risk of death that did require medical intervention." *Id.* On appeal, the Eighth Circuit found it unnecessary to determine whether the overdoses constituted "significant physical injury," because "any potential error . . . was harmless" as the district court "was authorized under § 3553(a) to give weight to the fact that [the defendant's] distribution of heroin was a but-for cause of episodes in which two persons required emergency medical attention to avoid death or permanent injury." *Id.* at 810-11. So too here.

In Prince's case, the district court stated that, even if it "completely agreed" with Prince's objection to the application of § 5K2.2, the overdose was "an independent reason for the Court to vary" and that Prince's sentence was "in essence [] going to be a three-level departure/variance." Thus, just as our sister circuit found in *Hubbard*, the district court provided a clear statement on the record that it would have imposed the same sentence, regardless of whether B.R.'s overdose technically fell under § 5K2.2. Indeed, it described the sentence as a "departure/variance." *Id.* Though the district court was not as explicit regarding a potential appeal, it is equally as clear that

Prince's sentence would be the same with or without § 5K2.2. *Hubbard* is not binding but is persuasive precedent providing an alternative reason to affirm. *See also United States v. Schock*, 862 F.3d 563, 569 (6th Cir. 2017) (noting that there are times when reliance on an incorrect range is harmless "because the record reflects that the district court 'thought the sentence it chose was appropriate irrespective of the Guidelines range.'") (quoting *Molina-Martinez v. United States*, 136 S. Ct. 1338, 1346-47 (2016)).

Prince's only arguments contrary to a finding of significant injury are unavailing. In short, Prince cannot separate and compartmentalize the symptoms of the overdose to reduce the severity of the injury. True, the paramedics diagnosed B.R.'s overdose via, at least, reduced respiratory rate and unconsciousness. But those symptoms do not define his condition. Take, for example, a heart attack. While the outward manifestations of a heart attack may include similarly mundane symptoms such as chest discomfort, shortness of breath, and nausea, and though medical intervention may prevent death and further injury, this does not alter the severity of the underlying condition. Lastly, as made clear in the policy statement, a lack of permanent injury does not negate an upward departure under § 5K2.2. *See, e.g.*, *United States v. Evans*, 285 F.3d 664, 676 (8th Cir. 2002) (finding district court did not abuse its discretion in granting motion for upward departure under § 5K2.2 where victims had significant physical injures but were not admitted to the hospital or disabled permanently).

**IV.**

We need not and do not find that a drug overdose is *per se* a significant physical injury under § 5K2.2. Nor do we attempt to further define that term. Instead, we hold that the district court's conclusion that B.R. suffered a significant physical injury was soundly based on testimony from Agent Muse's description of the overdose, which included the impressions and findings of

the responding paramedics.  Though we cannot know what would have occurred had B.R. not been found unconscious inside the grocery store, there is no doubt that "something serious [was] afoot." *Singleton*, 917 F.2d at 413-14 (noting that significant injury "fairly exudes the impression that something serious is afoot" and that it should be "something more than the ordinary scratches, scrapes and bruises").  Regardless, the district court had ample discretion to depart on other grounds and provided explicit statement that it would.  Thus, the district court did not abuse its discretion.  We **AFFIRM**.