# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 05-3446

_____

United States of America,                  *
                                            *
            Plaintiff - Appellee,           *
                                            *
    v.                                      *
                                            *
Marcia Brave Thunder,                       *
also known as Marcia Bailey,                *
                                            *  Appeals from the United States
            Defendant - Appellant.          *  District Court for the District of
                                            *  North Dakota.
_____                                 *

No. 05-3447

_____

United States of America,                  *
                                            *
            Plaintiff - Appellee,           *
                                            *
    v.                                      *
                                            *
Rinissa Fitzpatrick,                        *
                                            *
            Defendant - Appellant           *

_____

Submitted: April 19, 2006
Filed:  April 24, 2006

_____

Before MURPHY, MELLOY, and GRUENDER, Circuit Judges.

_____

MURPHY, Circuit Judge.

A jury convicted Marcia Brave Thunder, a/k/a Marcia Bailey, and Rinissa Fitzpatrick of theft from an Indian tribal organization, conspiracy to commit an offense against the United States, and making false statements to the Federal Bureau of Investigation (FBI). The district court[1] sentenced Brave Thunder to 15 months and Fitzpatrick to 21 months and ordered restitution from both. Brave Thunder and Fitzpatrick appeal, challenging the sufficiency of the evidence and their sentences. We affirm.

A federal grand jury indicted Brave Thunder and Fitzpatrick on one count of theft from the Long Soldier District of the Standing Rock Sioux Tribe, in violation of 18 U.S.C. §§ 1163 and 2, conspiracy to commit offenses against the United States by stealing and misapplying funds belonging to the Tribe, in violation of 18 U.S.C. § 371, and making false statements to the FBI about tribal consultant agreements and their own consultant status, in violation of 18 U.S.C. § 1001.

At trial the government introduced evidence that Brave Thunder and Fitzpatrick held several elected positions in the Long Soldier District of the Standing Rock Sioux Tribe. During the time period relevant to these appeals, Fitzpatrick, who had been elected secretary for the District, served as interim treasurer because the elected treasurer had resigned. Brave Thunder served as a member of the Business Committee, a subcommittee of the Planning Commission.

_____

[1]The Honorable Daniel L. Hovland, Chief Judge, United States District Court for the District of North Dakota.

When Cheryl Penny was appointed treasurer in May 2003, she sought to obtain the District's financial records from Fitzpatrick but learned that the records had been delivered by Fitzpatrick and Brave Thunder's mother to a certified public accountant, Paul East, for a review ordered by the District. After an investigation was initiated against District officers, the records were turned over to FBI Special Agent Hal Stutsman who reviewed them with Penny. Stutsman and Penny discovered a number of consultant agreements which had been executed in 2002 authorizing payment by the District of thousands of dollars to Brave Thunder and Fitzpatrick. They also found files containing consultant offer letters for Brave Thunder and Fitzpatrick, consultant agreements, returned checks, and worksheets tracking the consultant payments. Tribal law prohibited elected officials from entering into contracts with the District, and consulting agreements needed approval from the District Council and the Tribal Council. None of the consulting agreements had gotten such approval.

Stutsman created a summary of the checks issued pursuant to the consulting agreements to Fitzpatrick and Brave Thunder between September 1, 2002 and March 31, 2003, showing payments of $71,000 to Fitzpatrick and $40,100 to Brave Thunder. Stutsman tracked $32,100 of the consulting money paid to Fitzpatrick and $23,900 of that paid to Brave Thunder to their respective bank accounts. Stutsman noted discrepancies between the District Planning Commission minutes which had been delivered to Paul East and the official versions filed with the Tribal Council. Only the unofficial minutes contained motions for the approval of consultant agreements for Brave Thunder and Fitzpatrick; the Planning Commission members shown as having made the motions denied it.

When Stutsman confronted Brave Thunder and Fitzpatrick, Brave Thunder said she had not signed a consultant agreement and did not recall being paid pursuant to one. Fitzpatrick said she had not been hired as a consultant and claimed not to have seen any consultant agreements. Stutsman had exemplars of the handwriting of Brave Thunder and Fitzpatrick reviewed by a trained handwriting examiner. The examiner

opined that it was "highly probable" that Brave Thunder's signatures on the consultant agreement and the exemplars were authored by the same person and stated without reservation that the Fitzpatrick signatures on the agreement and the exemplars had been written by the same individual.

The jury convicted Brave Thunder and Fitzpatrick on all three counts. At sentencing the district court imposed two level enhancements under U.S.S.G. § 3B1.3 for both defendants based on their abuse of positions of trust. The court noted that Fitzpatrick was an elected official who had served as a member of the Board and Planning Commission, had authority to sign checks, and had signed both the checks and consulting agreements at issue. It also observed that Brave Thunder was a member of the Business Committee, bore responsibility for planning and recommending approval of expenditure of funds, and executed the false consulting agreements. The court also found that an 8 level increase to Fitzpatrick's offense level was warranted under U.S.S.G. § 2B1.1(b)(1)(E) because the loss from her offenses exceeded $70,000. The court sentenced Fitzpatrick to 21 months and $72,000 restitution and Brave Thunder to 15 months and $40,100 restitution. On appeal both challenge their sentencing enhancements as well as the sufficiency of the evidence underlying their convictions.

A guilty verdict will only be overturned if no reasonable jury could have found the defendant guilty beyond a reasonable doubt. United States v. Gjerde, 110 F.3d 595, 599 (8th Cir. 1997). Brave Thunder alleges that there was insufficient evidence that she deposited consultant funds from the District and argues that she did not violate 18 U.S.C. § 1163 because she did not have access to funds or supervisory authority over them. Fitzpatrick alleges that there was insufficient evidence for her theft conviction because the government only demonstrated bad recordkeeping rather than proving that the disbursed money had been stolen or misapplied. The government introduced a large amount of evidence of signed consulting agreements, consulting payments, falsified meeting minutes, and handwriting analysis, which

provided an adequate basis for the jury findings that Fitzpatrick and Brave Thunder were guilty of theft. Fitzpatrick and Brave Thunder's alternative interpretations of the evidence – asserting, for example, that others could have altered the documents and that there was no proof that Brave Thunder deposited money from consulting agreements – cannot overcome the factual findings reached by the jury.

Brave Thunder and Fitzpatrick both allege that their conspiracy convictions cannot stand because there was no evidence that there was a conspiracy involving the United States. This argument is based on a misreading of the statute and of the indictment: 18 U.S.C. § 371 prohibits not only a conspiracy to defraud the United States, but also a conspiracy to commit any offense against the United States. See 18 U.S.C. § 371. Since the indictment charged the latter – a conspiracy to violate 18 U.S.C. § 1163 – the government was only required to introduce evidence of a conspiracy to commit theft.

Brave Thunder and Fitzpatrick also challenge their convictions for making false statements about the consultant arrangements. Brave Thunder alleges that the government did not prove that her statements about not recalling the consultant agreements or not having been paid as a consultant were false, especially since the agreements had not been approved by the necessary parties. Fitzpatrick claims that if she had said she was hired as a consultant, the statement would have incriminated her and would have been false. She also alleges that there was no proof that she did remember any agreement at the time of her interview. None of these arguments has merit. Brave Thunder and Fitzpatrick were paid for consultant work, the jury could infer they had seen the consultant agreements because they signed them, and there is no constitutional right to provide a false answer. See Brogan v. United States, 522 U.S. 398 (1998) ("invocation of the Fifth Amendment privilege...allows a witness to remain silent, but not to swear falsely") (internal quotation omitted).

Finally, Brave Thunder and Fitzpatrick challenge the district court's sentencing enhancements for abuse of positions of trust and Fitzpatrick appeals the increase in her offense level based on the amount of loss. We review the district court's interpretation and application of the sentencing guidelines do novo and its factual findings for clear error. United States v. Jourdain, 433 F.3d 652, 658 (8th Cir. 2006). Brave Thunder alleges that she had no discretionary authority so her situation did not fit within the guideline commentary description of a position of trust. See U.S.S.G. § 3B1.3, comment, n.1. Fitzpatrick claims that the district court erred by making findings about the amount of loss and her abuse of a position of trust because these issues should have been for the jury and that she was no more culpable than Brave Thunder and a codefendant who had been acquitted. Under United States v. Booker, 543 U.S. 220 (2005), judicial factfinding is permissible at sentencing so long as the district court understands that the sentencing guidelines are advisory only. See United States v. Morell, 429 F.3d 1161, 1164 (8th Cir. 2005). After studying the record, we conclude that the district court thoroughly discussed the factors that marked Brave Thunder and Fitzpatrick as holding positions of trust and did not err by imposing enhancements or increasing Fitzpatrick's offense level based on the amount of loss.

Accordingly, we affirm the judgments of the district court.

_____