# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 06-3864

_____

United States of America,          *
                                   *
          Plaintiff - Appellee,    *
                                   *   Appeal from the United States
     v.                            *   District Court for the District of
                                   *   Nebraska.
Chad E. Gillispie,                 *
                                   *
          Defendant - Appellant.   *

_____

Submitted: May 15, 2007
Filed: June 25, 2007

_____

Before MURPHY, HANSEN, and COLLOTON, Circuit Judges.

_____

MURPHY, Circuit Judge.

Chad Gillispie pled guilty to conspiracy to distribute methamphetamine. The district court[1] sentenced him at the bottom of the advisory guideline range to 108 months. Gillispie appeals, arguing that the court should not have applied a guideline enhancement for possession of a firearm in connection with the offense and that it should have varied downward from the guideline range. We affirm.

_____

[1]The Honorable Richard G. Kopf, United States District Judge for the District of Nebraska.

Several people who had purchased methamphetamine from Gillispie or sold it to him told Lana Sabata, an undercover investigator with the Lancaster County narcotics task force, about his involvement in the distribution of methamphetamine. One of them, Jennifer Robinson, agreed to become a confidential informant for the task force, and Sabata was able to make controlled buys of methamphetamine from Gillispie on six occasions during February and March 2006. On some of these buys Sabata was accompanied by Robinson. Most deals were conducted in or just outside Gillispie's residence. During the second buy at his residence Sabata saw Gillispie take the drugs from his top dresser drawer in which she could see additional methamphetamine, and on another occasion she saw him remove methamphetamine from his basement safe. Gillispie weighed the methamphetamine after removing it from the safe, but Sabata was not able to see what was still inside because the safe door blocked her view. Sabata overheard Gillispie telling a white male during another buy that he was planning to go to "Nicky's" where he was to receive a handgun in exchange for money Nicky owed him.

Following the last controlled buy on March 7, 2006, a search warrant was executed on Gillispie's residence. The police found multiple items of drug paraphernalia, six digital scales, and 8.48 grams of methamphetamine on Gillispie's person. Gillispie's basement safe contained packages of methamphetamine holding 2.77 grams, 1.31 grams of psilocyn, ten .22 caliber hollow point bullets, a .22 caliber revolver, a Ruger automatic handgun and magazine, and a nylon sidekick holster. Officers also found a 380 semiautomatic pistol and magazine in the top drawer of Gillispie's dresser. A .38 caliber revolver and a 12 gauge shotgun were found in the bedroom. After waiving his Miranda rights, Gillispie admitted he owned the guns.

Gillispie was indicted on one count of conspiracy to distribute and to possess with intent to distribute 50 grams or more of methamphetamine and one count of possession of methamphetamine with intent to distribute. Gillispie pled guilty to the conspiracy count pursuant to a plea agreement. The agreement provided that Gillispie

would receive no enhancement for his role in the offense but that both parties were free to address the issue of an enhancement for possession of a dangerous weapon in connection with the offense. The agreement also allowed Gillispie to request a downward variance from a guideline sentence.

The presentence report recommended that Gillispie receive a three level reduction for acceptance of responsibility and a two level enhancement for possession of a dangerous weapon in connection with the offense. Gillispie's base offense level was set at 32. After the recommended adjustments his total offense level was 31, which combined with a criminal history category I resulted in a sentencing range of 108 to 135 months.

Gillispie objected to the enhancement for possession of a dangerous weapon. At the evidentiary hearing on his objection, investigator Sabata testified about the controlled buys she made from Gillispie, including her observation of where he kept his drugs and the overheard conversation about "Nicky." An officer who executed the search warrant for Gillispie's home testified about the location of the weapons found there. Gillispie submitted his own affidavit in which he averred that the firearms in the safe were used only for target practice and were kept in the safe to keep them out of the hands of his son, that the .38 caliber revolver found in the bedroom did not work, and that he knew nothing about the 380 semiautomatic pistol found on top of the dresser. Counsel for Gillispie argued that the mere presence of firearms was not enough to justify the enhancement. The district court overruled the objection, finding that the guns were kept in the same safe as the drugs, that Gillispie was dealing drugs out of the safe, and that there was evidence indicating that he received a gun in exchange for drugs.

At sentencing defense counsel asked for a downward variance to 60 months imprisonment, citing Gillispie's successful completion of a drug treatment program and continued employment. Counsel also observed that although Gillispie's son had

been removed from his home and placed in the custody of the state after his arrest, he had done what was necessary to try to regain custody.[2] Lastly, the defense noted that Gillispie's conviction would make him unable to possess guns and pursue his love of hunting. The government maintained that the record did not support the substantial downward variance requested by Gillispie.

The district court declined to vary downward. It stated that there was nothing sufficiently unusual about this case which would call for a variance, remarking that "I see a number of people such as your client who love guns, who got involved with methamphetamine," but then seek treatment. It noted that many such defendants, "particularly if they're older and mature like [Gillispie]," realize that they "can't live like this any longer and they begin to make substantial headway dealing with their addiction." Concluding that there was no combination of factors which made this an atypical case, the district court sentenced Gillispie to 108 months in prison followed by five years of supervised release.

Gillispie argues that the district court erred in imposing an enhancement for possession of a dangerous weapon because evidence was lacking of a connection between his drug dealing and the guns found in his residence. He contends that there is undisputed evidence that the revolver found in the bedroom does not function, that shotguns such as the one found in Gillispie's house are typically associated with hunting, and that there is no evidence that the guns were connected to his methamphetamine dealing because investigator Sabata was unable to see what was inside his basement safe. He asserts that by the time the search warrant was executed on March 7, 2006, he had moved his drug activities to the RV parked outside his

---

[2]The presentence report submitted to the district court on October 3, 2006 stated that a custody matter was pending in juvenile court and that Gillispie's son was currently living with his mother. Neither the parties' briefs nor their excerpts from the transcript of the November 9, 2006 sentencing hearing provide further information on the status of the custody matter.

residence where no firearms were found. The fact that guns were found in the safe in his residence was consistent with his stated desire to hide them from his son, not with active use in a drug operation. He also maintains that the district court was speculating when it concluded that the debt "Nicky" owed Gillispie was drug related. We review a district court's interpretation and application of the guidelines de novo and its factual findings regarding enhancements for clear error. United States v. Jourdain, 433 F.3d 652, 658 (8th Cir. 2006).

Although the mere presence of a firearm cannot support the enhancement at issue here, United States v. Savage, 414 F.3d 964, 966 (8th Cir. 2005), the enhancement "should be applied if the weapon was present, unless it is clearly improbable that the weapon was connected with the offense." U.S.S.G. § 2D1.1 cmt. 3. We conclude that the government carried its burden of proof to support the enhancement. Officers found a revolver and bullets and a Ruger handgun and magazine in the same safe as 2.77 grams of methamphetamine. Moreover, investigator Sabata observed Gillispie dealing methamphetamine out of this safe. The facts that some of the drug buys took place just outside Gillispie's house or that Sabata's view of the interior of the safe was blocked are not controlling, and the haphazard arrangement of the guns and drugs in the safe does not mean they were not connected. A methamphetamine dealer and addict may well not be neat or methodical in arranging the tools of his trade. Sabata's uncontradicted testimony, the physical proximity between the methamphetamine and the guns at the time of the search, and the ready accessibility of the guns support the enhancement imposed by the dsitrict court. See Savage, 414 F.3d at 967.

Gillispie also argues that the district court abused its discretion by declining to grant a downward variance. He contends that his status as a first time felon, his skills and long work history, his concern for his son and efforts to regain custody, and his progress toward overcoming his drug addiction all militate in favor of a variance. He maintains that his sentence is longer than necessary under 18 U.S.C. § 3553(a) and

that its length cannot be justified by a need for additional training or counseling because any further drug treatment will take far less time than the 108 months of his sentence. The government contends that the district court properly found that there was nothing unusual in this case to support a variance.

Our standard of review is whether the district court abused its discretion by imposing an unreasonable sentence. United States v. Haack, 403 F.3d 997, 1003 (8th Cir. 2005). A sentence may be unreasonable if the court fails to consider a relevant factor that should have received significant weight, gives significant weight to an improper factor, or weighs the appropriate factors in a clearly erroneous way. Id. at 1004. A proper factor is one listed in 18 U.S.C. § 3553(a). United States v. Long Soldier, 431 F.3d 1120, 1123 (8th Cir. 2005).

The district court followed the proper sentencing procedure under the advisory guidelines. It first calculated the guideline sentence, including consideration of a departure. It then examined whether a variance was called for in light of the statutory concerns in 18 U.S.C. § 3553(a), while also reflecting that a sentence within the guidelines is presumptively reasonable. United States v. Beal, 463 F.3d 834, 836 (8th Cir. 2006). Gillispie contends that the district court did not sentence him in a manner consistent with 18 U.S.C. § 3553(a), but the transcript reveals that the court examined the most pertinent § 3553(a) factors and determined that none of them made Gillispie's case fall outside the guideline range. A mechanical recitation of the statute, including the requirement that a sentence be no longer than necessary to promote the goals of § 3553(a), is not required. See Long Soldier, 431 F.3d at 1123.

We conclude that Gillispie has not shown that his sentence was unreasonable. Rehabilitation is a relevant sentencing goal, but it is also one of the factors considered for acceptance of responsibility and we cannot say the district court failed to give it significant consideration in this case. See United States v. Lazenby, 439 F.3d 928, 932-33 (8th Cir. 2006). The district court specifically found that Gillispie's

rehabilitation was not atypical, and Gillispie has not articulated why that finding was clearly erroneous. His criminal history had already been considered in calculation of the guideline range and was not a factor requiring a variance. Gillispie's ties to his son and other children did not prevent him from dealing dangerous drugs and keeping a large number of deadly weapons in the residence, and his wife is apparently available to care for his son while Gillispie is imprisoned. His substance abuse and employment history are not so unusual as to make the guideline sentence unreasonable. See United States v. Gentile, 473 F.3d 888, 893 (8th Cir. 2007) (substance abuse); United States v. Weise, 128 F.3d 672, 674-75 (8th Cir. 1997) (guidelines take employment history into account). The district court heard considerable argument at the sentencing hearing about the § 3553(a) factors and Gillispie's personal circumstances and found they did not warrant a downward variance. We cannot say that that conclusion was an abuse of discretion. We conclude that the district court imposed a reasonable sentence under all the circumstances.

Accordingly, the judgment of the district court is affirmed.

_____