# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

—————

No. 06-3593

—————

United States of America,                  *
                                            *

      Plaintiff/Appellee,          *
                                            * Appeal from the United States

v.                                 * District Court for the Southern
                                            * District of Iowa.

Clarence Frazier Banks, III,      *
                                            *

      Defendant/Appellant.      *

—————

Submitted:  May 15, 2007
Filed:  January 9, 2008

—————

Before LOKEN, Chief Judge, JOHN R. GIBSON, and WOLLMAN, Circuit Judges.

—————

JOHN R. GIBSON, Circuit Judge.[1]

Clarence Frazier Banks, III appeals from his conviction, following a jury trial where he was found guilty of being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g). On appeal, Banks argues the following: (1) the

---

[1]Chief Judge Loken concurs in all but Part II.A of this opinion.

district court[2] erred by allowing the firearm into evidence because it was seized in violation of the search warrant requirement of the Fourth Amendment; (2) the district court erred in ruling that a pawn shop receipt was admissible non-hearsay and that an ATF purchase form was admissible under the residual hearsay exception; (3) the verdict reached by the jury was not supported by sufficient evidence; and (4) the district court erred during sentencing when it found that Banks had previously committed two felony crimes of violence and in concluding that his criminal history category was VI.  In addition, he argues that the sentence imposed is unreasonable under 18 U.S.C. § 3553(a).  We affirm.

I.

Des Moines police arrested Banks on May 4, 2004 when he drove up to the driveway of a house where they were executing a narcotics search warrant.  Officer Mahlstadt found narcotics on or near Banks, who told police his name was Andre Stevens.  Banks was released before police learned his true identity or that he was wanted on-out-of state warrants.  On May 12, Officer Stueckrath was conducting surveillance when he observed Banks in a car.  He arrested Banks on the out-of-state warrants and identified the car as being registered to Brenda Jones.  That same day Officer Mahlstadt contacted Jones.  He learned that Banks had been staying at Jones's apartment and that she had loaned him her car.  Officer Mahlstadt obtained consent from Jones to search her apartment for contraband.

Inside the apartment, Mahlstadt sat with Jones while Officer Mathis searched the bedroom.  Jones told the officers that they would find a small bag of marijuana in her bedroom closet, and Officer Mathis seized it.  On the floor in Jones's bedroom, Mathis found a black zippered gym bag.  Inside the gym bag, he

_____

[2] The Honorable Robert W. Pratt, Chief Judge, United States District Court for the Southern District of Iowa.

found a locked, plastic container bearing the words "PHOENIX ARMS," men's clothing, and a credit card offer letter addressed to Andre Stevens. Mathis loosened the hinge on the Phoenix Arms container and seized a Phoenix Arms semi-automatic pistol and ammunition, along with a receipt for the gun from a Colorado pawn shop made out to Andre Stevens. Upon further search of the bag, Mathis discovered an Alcohol, Tobacco, and Firearm (ATF) purchase form for the gun, which was also in the name of Andre Stevens. Mathis seized the gun, case, ammunition, receipt, ATF form, and letter.

Jones told police that the bag belonged to Banks, although she referred to him as Andre Stevens. Banks was indicted for being a felon in possession of a firearm under 18 U.S.C. § 922(g). At trial, Banks stipulated to the use of the alias. Jones identified him as Andre Stevens, along with testifying that he spent several nights at her apartment and that he had borrowed her car with permission. Banks was convicted of violating § 922(g). He was sentenced to 100 months' imprisonment, followed by three years of supervised release.

## II.

The threshold issue in this case is whether Officer Mathis's search of the locked gun case and seizure of its contents violated Banks's Fourth Amendment rights. Banks filed a motion to suppress the gun, arguing Mathis violated his Fourth Amendment rights when he broke open and searched the gun case without a warrant. The district court denied the motion, holding that no Fourth Amendment search occurred because Banks had no reasonable expectation of privacy in the contents of what was plainly a gun case. Banks appeals the denial of his motion to suppress.

We review "findings of historical fact only for clear error and . . . give due weight to inferences drawn from those facts by resident judges and local law

-3-

enforcement officers," but the ultimate conclusion of whether an exception to the warrant clause exists we review de novo.  Ornelas v. United States, 517 U.S. 690, 699 (1996).

A.

Police may seize, without a warrant, an item that is 1) in plain view 2) when it is observed from a lawful vantage point,[3] 3) where the incriminating character of the item is immediately apparent.  Horton v. California, 496 U.S. 128, 136-37 (1990). The first requirement, that the objects be in plain view, "is often considered an exception to the general rule that warrantless searches are presumptively unreasonable. . . ."  Id. at 133-34.  The third requirement, that the incriminating character of an item be immediately apparent, is satisfied when police have "probable cause to associate the property with criminal activity."  United States v. Raines, 243 F.3d 419, 422 (8th Cir. 2001) (internal quotation marks omitted).  Probable cause is required to justify the seizure of an item that police observe in plain view.  Arizona v. Hicks, 480 U.S. 321, 326-27 (1987).  Ultimately, the standard by which a warrantless search and seizure is reviewed under the Fourth Amendment is reasonableness.  Id.

First, we consider whether police should have obtained a warrant before they opened the Phoenix Arms container.  Observing objects in plain view violates no reasonable expectation of privacy, which obviates the need for a search warrant.  Horton v. California, 496 U.S. 128, 133 (1990) (stating that no invasion of privacy occurs when an item is observed in plain view).  Ordinarily, a warrant is necessary before police may open a closed container because by concealing the contents from

---

[3] Banks does not argue that the police conducted an unlawful search when Officer Mathis went through the gym bag, conceding that Mathis was in a lawful vantage point when he found and observed the exterior of the gun case.

plain view, the possessor creates a reasonable expectation of privacy. Robbins v. California, 453 U.S. 420, 427 (1981), overruled on other grounds by United States v. Ross, 456 U.S. 798 (1982). However, like objects that sit out in the open, the contents of some containers are treated similarly to objects in plain view. In Arkansas v. Sanders, the Court suggested that no warrant is required to open such containers: "some containers (for example . . . a gun case) by their very nature cannot support a reasonable expectation of privacy because their contents can be inferred from their outward appearance." Arkansas v. Sanders, 442 U.S. 753, 764-65 n.13 (1979) (emphasis added), overruled on other grounds by California v. Acevedo, 500 U.S. 565 (1991). We previously followed the Sanders dictum when we affirmed a district court's determination that no warrant was necessary to search a "bag [whose] size and shape suggested it contained a gun." United States v. Miller, 929 F.2d 364, 364-65 (8th Cir. 1991). This exception is limited to those rare containers that are designed for a single purpose, Texas v. Brown, 460 U.S. 730, 750-51 (1983) (Stevens, J., concurring in the judgment), because the "distinctive configuration of [such] container[s] proclaims [their] contents; [consequently,] the contents cannot fairly be said to have been removed from a searching officer's view," Robbins, 453 U.S. at 427. Individuals, therefore, possess a lesser expectation of privacy in the contents of such containers when the container is observed from a lawful vantage point.

There is some suggestion, however, that this does not end the inquiry of whether police may open the container without a warrant because the contents of a single-purpose container are not truly in plain view. In Arizona v. Hicks, the Court gave life to the idea that some lesser invasions of privacy might be justified without a warrant when part of the object is in plain view and police have probable cause to seize it. 480 U.S. at 325 (holding that observance of stereo turntable in plain view did not justify police moving turntable in order to read its serial number when they lacked probable cause). The single-purpose nature of a container

reduces the degree of privacy that a reasonable person may expect, but it does not eliminate it. If we allow police to open any single-purpose container they lawfully come across we would be authorizing exploratory searches of containers where a reasonable person would rightfully expect privacy: for example, police could open violin cases and guitar bags, look inside cereal boxes and bread baskets, or empty out clothes hampers and jewelry boxes without even a suspicion that these containers hold evidence of a crime. See, e.g., United States v. Donnes, 947 F.2d 1430, 1437 (10th Cir. 1991) (holding that police violated Fourth Amendment when they searched camera lens case that produced drugs). Hicks was concerned with a statement of the plain view doctrine that cut it "loose from its theoretical and practical moorings," Hicks, 480 U.S. at 326-27, and we do not wish our statement of the single-purpose container rule to be read such that we authorize police to open any seemingly innocuous single-purpose container. Hicks suggests that such containers would be protected by requiring police to have probable cause to seize the container before they may open it. But we need not decide if such a requirement is necessary because in this case, as we explain below, police possessed probable cause to seize the Phoenix Arms container before they opened it and discovered the gun inside.

## B.

We now turn to the application of the law to the facts before us. First, plain view requires that police observe the container from a lawful vantage point. Jones gave the officers consent to search her apartment, which is where they observed the gun case. Second, the container must be readily identifiable as a single-purpose container whose distinctive configuration allows police to infer its contents, United States v. Meada, 408 F.3d 14, 23-24 (1st Cir. 2005) (applying "readily identifiable" test). A gun case is the very model of a single-purpose container. Robbins, 453 U.S. at 427; Sanders, 442 U.S. at 764-65 n.13. However, because gun cases vary

in characteristics, each case must be evaluated on its own facts. If the container at issue is readily identifiable as a gun case by its distinctive configuration, then we will treat it as being a single-purpose container. Banks argues that only a soft-sided gun bag, unlike the hard plastic Phoenix Arms container at issue here, is readily identifiable as a gun case because only a soft-sided bag reveals the shape of a gun inside. Id. He cites United States v. Bonitz, 826 F.2d 954, 956 (10th Cir. 1987), for the proposition that while a soft-sided gun case could "self-reveal the presence of a weapon inside" the same was not true of an unmarked, hard plastic container. We decline to limit the exception to soft-sided gun bags. Although a soft-sided gun bag may reveal more about the shape of its contents than a hard shelled case, that is not always true. For instance, a hard sided violin case may reveal the shape of a violin. A label on the case might give as much information about the contents and purpose of the container as the contour visible from a soft case. The district court found several characteristics of the Phoenix Arms container relevant to its analysis:

> Not only was [the case] a molded plastic case, a configuration handgun manufacturers commonly use when initially packaging a firearm for the end consumer, this particular case had the manufacturer's name, <u>clearly indicating an arms product</u>, imprinted on the entire length of the front of the case. . . .

United States v. Banks, No. 4:05-cr-00049, slip op. at 16 (S.D. Iowa Sep. 15, 2005) (emphasis added). Particularly persuasive is the factual finding by the district court that the Phoenix Arms container was consistent with containers that handgun manufacturers "commonly use when initially packaging" a firearm, id., because such a finding supports the single-purpose nature of this container. This finding is supported by the size of the writing on the case: "PHOENIX ARMS" spans the width of the case and consumes about a quarter of the length of the case. These characteristics are similar to those of a container the First Circuit held was readily

identifiable as a gun case.  Meada. 408 F.3d at 23-24 (where the label on the container read "GUN GUARD").

Banks argues that the district court's determination must be made from the perspective of a lay person.  In other words, he contends the district court may not consider testimony based on the special expertise of a police officer, knowledgeable in firearms, in deciding whether a case is readily identifiable as a gun case.  See United States v. Gust, 405 F.3d 797, 801 (9th Cir. 2005).  We need not reach that question here, because unlike the container in Gust, the Phoenix Arms container is obviously a gun case, even to the casual observer.  In Gust, the case bore the inscription "BUSHMASTER," which the court held a lay person would not recognize as a gun manufacturer.  Id.  Unlike the word Bushmaster, "Phoenix Arms" has a plain meaning that suggests "gun."  The word "arm," is defined as a "means of offense or defense," and it is short for the word  "firearm," which means gun.  Webster's New International Dictionary 118 (3d ed. 1981).  An individual does not need special knowledge of firearms in order to conclude that the label "PHOENIX ARMS" is the name of a particular gun manufacturer.  The district court made all the necessary factual findings, supported by the record, to support a Fourth Amendment determination that the container was readily identifiable as a gun case.

Finally, we consider whether police had probable cause to seize the gun case.  That question is answered by the gun case itself.  There is a reasonable likelihood that the container would contain a gun.  A gun, possessed by a felon, is always evidence of a crime.  Brayman v. United States, 96 F.3d 1061, 1065 (8th Cir. 1996); see 18 U.S.C. § 922(g)(1).  Banks argues that Officer Mathis did not know he was a felon at the time of the search.  The district court found that "the record does not show with certainty whether [Mahlstadt or Mathis] did in fact know prior to the May 12 search that Defendant was" a felon.  United States v.

Banks, No. 4:05-cr-00049, slip op. at 3 (S.D. Iowa Mar. 21, 2006). Rather, the district court imputed the knowledge of another officer, Officer Stueckrath, to Mathis and Mahlstedt, under the collective knowledge doctrine.

The collective knowledge doctrine imputes the knowledge of all officers involved in an investigation upon the seizing officer in order to uphold "an otherwise invalid search or seizure." United States v. Gillette, 245 F.3d 1032, 1034 (8th Cir. 2001); see also United States v. Terry, 400 F.3d 575, 581 (8th Cir. 2005) (applying collective knowledge doctrine to uphold seizure of ammunition by officer with no personal knowledge that defendant was subject to protective order restricting him from possessing ammunition). Applying the doctrine requires some degree of communication between the officer who possesses the incriminating knowledge and the officer who does not. The purpose of this requirement is to "distinguish between officers functioning as a search team and officers acting as independent actors who merely happen to be investigating the same subject." Gillette, 245 F.3d at 1034 (internal quotation marks and citations omitted). When officers function as a search team, it is appropriate to judge probable cause upon the basis of their combined knowledge, because "we presume that the officers have shared relevant knowledge which informs the decision to seize evidence or to detain a particular person." United States v. O'Connell, 841 F.2d 1408, 1419 (8th Cir. 1988); Terry, 400 F.3d at 581.

The record shows that Officer Stueckrath was investigating Banks's fugitive status, while Officers Mathis and Mahlstadt investigated Banks's possible involvement in narcotics. Banks argues that since the two investigations were independent, the collective knowledge doctrine should not apply. However, the two investigations were neither entirely independent nor entirely dependent upon one another. The record is clear that the officers were exchanging information and communicating with each other regarding their respective investigations. Banks,

No. 4:05-cr-00049, slip op. at 4 (S.D. Iowa Mar. 21, 2006). In fact, Officer Stueckrath was present either just before or just as the gun case was being opened. Even if his investigation was independent from Mathis's and Mahlstad's, his presence at the seizure is enough to justify application of the collective knowledge doctrine. See United States v. Blom, 242 F.3d 799, 808 (8th Cir. 2001) (stating, in dictum, that seizure of ammunition would have been appropriate if the officers who prepared the search affidavits that included defendant's felon status were present at the seizure). The district court did not err in allowing the firearm into evidence.

## III.

Banks complains that the district court abused its discretion when it admitted the pawn shop receipt and ATF form. We review the district court's evidentiary rulings for abuse of discretion. United States v. Sanchez-Godinez, 444 F.3d 957, 960 (8th Cir. 2006). We will reverse only if an error substantially prejudiced the outcome. Id.

## A.

In addition to the sales receipt that Officer Mathis found in the Phoenix Arms case, the government also introduced an ATF purchase form that it obtained from the Colorado pawn shop which sold the gun, in order to show that the gun was sold to a man using the name Andre Stevens. Banks argues that the district court erred when it admitted the ATF purchase form into evidence under Fed. R. Evid. 807, the residual hearsay exception, relying upon an interpretation of that rule by the Fourth Circuit in United States v. Simmons, 773 F.2d 1455, 1459 (4th Cir. 1985). Rule 807 allows for the admission of hearsay "not specifically covered by Rule 803 or 804 but having equivalent circumstantial guarantees of

trustworthiness." In total, there are five requirements for admissibility under Rule 807: 1) that the evidence have circumstantial guarantees of trustworthiness, 2) that the evidence be offered to prove a material fact, 3) that the evidence be more probative on the point offered than any other evidence which the proponent can procure through reasonable efforts, 4) that the proponent has served prior notice to the adverse party in advance of trial, and 5) that admission would comport with the general purpose of the rules and be consistent with the interests of justice. Fed. R. Evid. 807.

In Simmons, a split panel of the Fourth Circuit approved of the admission of an ATF tracing form under Rule 807. 773 F.2d at 1459. The firearms manufacturer completed the form at the request of an ATF agent involved in an investigation that led to trial. Id. at 1457. The panel rejected the government's argument that the form was admissible under the business records exception, id. at 1458 & n.4, but concluded that there was "no reason for the manufacturers of these weapons to falsify the entries on the routine ATF forms." Id. at 1459. Consequently, although hearsay, the form fell within the residual hearsay exception. Id. at 1460. The ATF form at issue here, Form 4473, is of a different nature than the tracing form under examination in Simmons. A tracing form is completed by the gun manufacturer after a firearm has been sold and only upon request of the ATF. Form 4473, however, is similar to a sales receipt in that a gun dealer routinely fills out a Form 4473 at the time of sale and holds it as a regular business record. Under these circumstances, Simmons does not relieve us of the need to engage in a systematic Rule 807 analysis.

Here, the point of contention between the parties is the circumstantial guarantee of trustworthiness of the form.[4] "In assessing the qualitative degree of

---

[4] Banks only argues this point in his brief and admits that along with the receipt the ATF form was "*the* crucial piece[] of evidence relied upon by the government."

trustworthiness of a particular statement, courts should inquire into the reliability of and necessity for the statement." United States v. Carlson, 547 F.2d 1346, 1354 (8th Cir. 1976) (interpreting the requirement under Rule 804(b)(5) that testimony have "circumstantial guarantees of trustworthiness"). One method of approaching this analysis is to "compare the circumstances surrounding the statement to the closest hearsay exception." 2 Kenneth S. Broun, McCormick on Evidence § 324 (6th ed. 2006); see, e.g., United States v. Fernandez, 892 F.2d 976, 981 (11th Cir. 1989) (considering "those statements that are similar though not identical to hearsay clearly falling under one of the four codified exceptions, if the statements otherwise bear indicia of trustworthiness equivalent to those exceptions."); United States v. Earles, 113 F.3d 796, 800 n.3 (8th Cir. 1997) (agreeing with and quoting Fernandez).

The ATF form would fall within the business records exception; however, the government did not call a witness from the pawn shop who was familiar with its record-keeping practices. Business records are admissible despite being hearsay because of their unusual reliability, which includes "systematic checking, by regularity and continuity which produce habits of precision, by actual experience of business in relying upon them, or by a duty to make an accurate record as part of a continuing job or occupation." Fed. R. Evid. 803 advisory committee note to 1972 Proposed Rules ¶ 6. The business record itself does not establish these things. A witness is necessary to show that the statement was made at or near the time of the transaction, kept in the course of regularly conducted activity, and prepared in the regular course of business. Fed. R. Evid 803(6); See United States v. Franks, 939 F.2d 600, 602 (8th Cir. 1991) (rejecting the argument that the witness must have personal knowledge of the document's preparation). The purpose of the witness, therefore, is to lay a foundation that the record is kept in a manner suggesting its trustworthiness despite the fact that it is hearsay.

Banks does not address the other Rule 807 requirements.

In this case, however, those record-keeping practices are mandated by law. Unlike other businesses, a firearms dealer is required to record all of its sales on Form 4473. 27 C.F.R. § 478.124(a). Specific information must be collected, including the buyer's name, sex, address, date and place of birth, height, weight, race, citizenship status, and a certification that the buyer is not a person prohibited from possessing a firearm. Id. at § 478.124(c)(1). A dealer must maintain Form 4473 in an indexed manner for no less than 20 years after the date of sale. Id. at § 478.129(a). Upon demand, a dealer must make available its records for inspection by ATF officers. 27 C.F.R. § 478.121(b). Failure to comply with these provisions may result in the dealer losing its license to sell firearms. On Target Sporting Goods, Inc. v. Attorney General, 472 F.3d 572 (8th Cir. 2007).

As the note to Rule 803 emphasizes, when a statement is made concurrent with a "duty to make an accurate record as part of a continuing job or occupation" we can infer a certain level of trustworthiness. Fed. R. Ev. 803 advisory committee note to 1972 Proposed Rules ¶ 6. In most cases, this duty is established by testimony of a record's custodian. In this case, it is established by the ATF regulations requiring proper record keeping practices. Simmons, 773 F.2d at 1459 & n.5. The contents of Form 4473 are, therefore, inherently trustworthy. Banks does not challenge the remaining four requirements of the residual hearsay exception. It is sufficient for us to say that upon review of the record we hold that all of the requirements have been met. The district court did not abuse its discretion in admitting the form.

B.

We next consider whether the district court erred in admitting the gun receipt into evidence. Although the receipt would clearly be hearsay for the purpose of proving that Banks purchased the gun, the district court admitted the

-13-

receipt for a nonhearsay purpose. Banks asserts that the prosecutor used the receipt in the hearsay manner. Even if he is correct, however, any error committed was harmless because it did not affect the substantial rights of the defendant, United States v. Melecio-Rodriguez, 231 F.3d 1091, 1094 (8th Cir. 2000). "An error in admitting testimony may be harmless if the testimony is corroborated by independent sources, or if it amounts to cumulative evidence on matters already before the jury." Id. The jury heard substantial corroborating evidence that was properly admitted. The ATF form was evidence of a sale to Andre Stevens. The gym bag contained, along with the gun, a credit card offer letter addressed to Andre Stevens, and Jones testified that the bag belonged to Andre Stevens. Consequently, the receipt was cumulative to substantial evidence that the gun belonged to Andre Stevens. The district court did not err in admitting it.

C.

Banks argues that insufficient evidence exists to support his conviction. We consider the evidence in the light most favorable to the government and reverse only if no reasonable jury could have found Banks guilty. United States v. Dabney, 367 F.3d 1040, 1042 (8th Cir. 2004). At trial, the government had the burden of proving two elements: 1) that Banks possessed the firearm and 2) that the firearm crossed one or more state lines either before or after Banks came into possession of it.[5] See 18 U.S.C. § 922(g) (the second element is drawn from the requirement in the statute that the gun affect interstate commerce; the jury instruction used the language referenced here).

The jury heard credible testimony from Brenda Jones that Banks left a gym bag at her apartment. Officer Mahlstadt testified that the gun case and gun were

_____

[5] Banks stipulated to the third element of the offense, that he was a prohibited person under 18 U.S.C. § 922(g).

found inside the gym bag along with the ATF form, the receipt, and the credit card offer letter – each of these documents contained the alias that the Banks admitted to using.  Banks was linked to Jones not only by her testimony, but by the fact that he was arrested driving her car.  As to the second element, the jury considered the ATF form, which demonstrated that the gun was sold by a dealer in Colorado, along with the opinion of ATF Agent Pritchett that the gun was manufactured in Ontario, California.  The gun was seized in Brenda Jones's Iowa apartment.  These facts are sufficient to support the conviction.

## V.

Finally, Banks appeals his sentence.  A district court must impose a sentence that is in accordance with the sentencing factors specified in 18 U.S.C. § 3553(a).  Although United States v. Booker, 543 U.S. 220 (2005), rendered the United States Sentencing Guidelines advisory, a district court must begin its analysis by calculating and considering the recommendation of the guidelines.  United States v. Gillispie, 487 F.3d 1158, 1162 (8th Cir. 2007).  Accordingly, the beginning of our analysis is to determine if the district court properly calculated the guidelines range.

## A.

The district court found that Banks had committed two prior felony crimes of violence.  Accordingly, the district court calculated his offense level at 24.  See USSG § 2K2.1(a)(2).  Banks admits to the two felonies, but contends that neither one satisfied the standard to be categorized as a crime of violence.  We review the district court's determination de novo.  United States v. Alas-Castro, 184 F.3d 812, 813 (8th Cir. 1999).

A crime of violence includes any offense punishable by "imprisonment for a term exceeding one year . . . involv[ing] conduct that presents a serious potential risk of physical injury to another." USSG § 4B1.2(a)(2). Banks was convicted of assault in the first degree under Colorado Revised Statute section 18-3-202, defined as causing serious bodily injury upon another person or by threatening certain state functionaries with a deadly weapon with an intent to cause serious bodily injury. Banks's conviction was mitigated, however, by the fact that Banks acted in the heat of passion. Id. at § 18-3-202(2)(a) (reducing felony to a Class 5 if committed in heat of passion).[6] Consequently, he argues that he is less culpable and that, as a result, his conviction should not be considered a crime of violence. But the guidelines only require conduct that poses a "serious potential risk of injury," USSG § 4B1.2(a)(2), and an assault in the first degree, whether in the heat of passion or not, still requires that the victim suffer serious bodily injury or that a state official be threatened with a deadly weapon, either one of which places his conviction squarely within the ambit of section 4B1.2(a)(2). See United States v. Jernigan, 257 F.3d 865, 866 (8th Cir. 2001) (rejecting argument that negligent homicide was not a crime of violence because defendant was less culpable than if he committed manslaughter).

Banks's second enhancing felony was a conviction for sexual assault on a child. Banks argues that since the crime can be committed by mere sexual contact with a minor, it is not necessarily a crime of violence. Sexual contact between parties of "differing physical and emotional maturity carries 'a substantial risk that physical force . . . may be used in the course of committing the offense.'" Alas-Castro, 184 F.3d at 813 (holding a crime committed under a Nebraska statute criminalizing sexual contact between an adult and a minor a felony crime of violence for sentencing purposes). The statute Banks was convicted under is

---

[6] Even a Class 5 felony is punishable by a term exceeding one year. Colorado Rev. Stat. § 18-1.3-401.

substantially similar to the statute analyzed in <u>Alas-Castro</u>. Consequently, the district court correctly calculated Banks's offense level as 24.

B.

Next, Banks argues that his criminal history category was miscalculated as a Category VI instead of a Category V. "We review the district court's interpretation and application of the sentencing guidelines de novo and its factual findings for clear error." <u>United States v. Brave Thunder</u>, 445 F.3d 1062, 1065 (8th Cir. 2006). Banks challenges the assessment of two criminal history points that resulted from several driving convictions in 1994 and 2000 to which he pled guilty. He collaterally attacks those convictions, arguing that the state of Colorado violated his constitutional right to counsel.

Once the government has proven the fact of conviction, the defendant bears the burden of proving the conviction was constitutionally infirm. <u>United States v. Charles</u>, 389 F.3d 797, 799 (8th Cir. 2004). Banks presented no such evidence. He relied exclusively upon the presentence report, which indicates that Banks acted pro se with regard to one of his two 1994 convictions. As to the 2000 convictions, the report states, "Attorney representation is unknown." Even assuming he was not represented when he pled guilty, that fact alone does not establish a constitutional violation. <u>See</u> <u>United States v. Abdul-Aziz</u>, 486 F.3d 471, 474 (recognizing that the Sixth amendment guarantees a defendant the right to counsel and the right to waive counsel). Since Banks did not testify, offer any documents to support his argument, or call any witnesses, he has failed to put forth any evidence that even suggests there was a violation of his right to counsel. <u>See</u> <u>United States v. Evans</u>, 285 F.3d 664, 674 (8th Cir. 2002) (concluding the same under similar facts while

reviewing for plain error). The district court correctly classified his criminal history as a VI.[7]

C.

Lastly, Banks argues that the district court imposed an unreasonable sentence. His recommended guidelines range was 100 to 125 months. The district court sentenced him to 100 months, the lowest end of the guidelines range. We review the ultimate sentence for reasonableness. United States v. New, 491 F.3d 369, 380 (8th Cir. 2007). When the sentence imposed by the district court falls within the range recommended by the guidelines, we presume the sentence is reasonable for the purpose of review. Id. This "reflects the fact that, by the time an appeals court is considering a within-Guidelines sentence on review, both the sentencing judge and the Sentencing Commission will have reached the same conclusion as to the proper sentence in the particular case. That double determination significantly increases the likelihood that the sentence is a reasonable one." Rita v. United States, 127 S. Ct. 2456, 2463 (2007). The district court should "'impose a sentence sufficient, but not greater than necessary, to comply with the basic aims of sentencing as set out'" in § 3553(a). Rita, 127 S. Ct. at 2463 (quoting 18 U.S.C. § 3553(a)). We will not reverse unless the district court did not "consider a relevant factor that should have received significant weight, [gave] significant weight to an improper or irrelevant factor, or consider[ed] only the appropriate factors but commit[ed] a clear error of judgment in weighing those factors." United States v. Mills, 491 F.3d 738, 741 (8th Cir. 2007), petition for cert. filed, (U.S. Nov. 5, 2007) (No. 07-7643)

---

[7] Banks also argues that the assessment of one point for committing the instant offense within two years of release from custody for another offense was in error, because he served time for the other charge after the instant conduct and not before. USSG § 4A1.1(e), comment (n.5) (noting that this section applies only if the conduct occurs after the release from custody). The government admits this error. As a result, Banks has 13 criminal history points, not 14. Nevertheless, he is still in criminal history category VI. See United States v. Evans, 285 F.3d 664, 674 (8th Cir. 2002) (recognizing as harmless miscalculations that have no effect on the ultimate category).

Banks argues that the district court failed to consider several facts in calculating his ultimate sentence, including the fact that he had an overly strict father, that his parents divorced when he was 15, that he was a bright, intelligent and engaged child, that he has two minor children, that he obtained his GED and took business classes at the community college, and that he worked as a drug counselor. According to the record, Banks raised these facts in his sentencing memorandum and the district court considered each § 3553(a) factor. While some of these facts are commendable and some are unfortunate, we cannot say that the district court failed to give them proper weight. To the contrary, the district court sentenced Banks to the low end of the guideline recommendation. This suggests that the district court gave consideration to the facts advanced by Banks in coming to his 100 month sentence. The sentence is, therefore, reasonable.

## VI.

For the reasons stated, we affirm the judgment of the district court.

LOKEN, Chief Judge, concurring.

I join the opinion of the court except Part II.A, which I consider unnecessary. Part II.A concludes that the police need probable cause, but not a warrant, to open a single-purpose container in plain view. The probable cause requirement is needed, the court explains, to make clear that the police may not "open any seemingly innocuous single-purpose container." Ante at 6. Though the concern is legitimate, the court's remedy is redundant. The plain view doctrine authorizes seizure of an item only when the incriminating nature of the item is immediately apparent. As the court explains in Part II.B, the incriminating nature of the firearm kept in Banks's single-purpose container was immediately apparent, which satisfied the probable cause requirement. In other words, requiring probable cause adds nothing to the safeguards inherent in the narrow plain view and single-purpose-container doctrines. See United States v. Weinbender, 109 F.3d 1327,

1330 (8th Cir. 1997) ("The immediately apparent requirement means that officers must have probable cause to associate the property with criminal activity.") (quotation omitted).

The more difficult issue is whether the police must also obtain a warrant before opening a single-purpose container that the plain view doctrine authorizes them to seize, when that container has been found during the consensual search of a home. See United States v. Chadwick, 433 U.S. 1, 11-13 (1977). The issue is difficult because the Supreme Court's decisions applying the warrant clause to searches of personal property are not models of consistency. See California v. Acevedo, 500 U.S. 565, 581-85 (1991) (Scalia, J., concurring). As the court notes, we held in United States v. Miller, 929 F.2d 364, 364-65 (8th Cir. 1991), that the plain view exception to the Fourth Amendment's warrant requirement applies to the search of a single-purpose container. We relied in Miller on a footnote in a Supreme Court decision later overruled on other grounds, but other circuits have more recently reached the same conclusion. See United States v. Meada, 408 F.3d 14, 22-24 (1st Cir. 2004), and cases cited. I agree that Miller is still good law and therefore concur.

_____