KELLY, Circuit Judge,
dissenting.
This appeal presents a narrow legal issue: Does scanning the magnetic stripe on the back of a credit or debit card to access the data stored on it implicate the protections of the Fourth Amendment? In my view, answering this question requires further factual development, and I would remand the case to the district court to hold an evidentiary hearing.[5]
A Fourth Amendment search occurs when the government violates a subjective expectation of privacy that society recognizes as reasonable. Kyllo v. United States, 533 U.S. 27, 31-33, 121 S.Ct. 2038, 150 L.Ed.2d 94 (2001). The district court, while expressing some skepticism on whether Briere[6] had a subjective expectation of privacy in the contents of the cards, said that it would “give the defendant the benefit of the (minimal) doubt.” United States v. Briere de L’lsle, No. 4:14-CR-3089, 2014 *434 WL 5431349, at *3 n.2 (D. Neb. Oct. 24, 2014).[7] The sole remaining question, then, is whether an expectation of privacy in the contents of the magnetic stripes on one’s credit and debit cards is reasonable.
In my view, the answer to this question depends on whether there are significant technological barriers to an individual rewriting information on the magnetic stripe of their cards, and I would remand the case to the district court to develop evidence on this point. If the information on the magnetic stripe can be modified without much difficulty, the cardholder may indeed have a reasonable expectation of privacy in the contents of the stripe, based on the straightforward principle that law enforcement conducts a Fourth Amendment “search” when it reads the contents of rewritable digital storage media. See United States v. James, 353 F.3d 606, 613 (8th Cir. 2003) (holding that accessing CDs, given by defendant to a friend violated Fourth Amendment). That principle is implicit in the fact that both this court and the Supreme Court have consistently required searches of storage devices like hard drives and CDs to be justified either by a warrant or an applicable exception to the warrant requirement. See, e.g., Riley v. California, — U.S.-, 134 S.Ct. 2473, 2482, 189 L.Ed.2d 430 (2014) (search incident to lawful arrest); United States v. Makeeff, 820 F.3d 995, 1002-03 (8th Cir. 2016) (per curiam) (probationary search); United States v. Beckmann, 786 F.3d 672, 677-78 (8th Cir. 2015) (consent); United States v. Cartier, 543 F.3d 442, 447-48 (8th Cir. 2008) (warrant). The principle is also suggested by the Supreme Court’s judgment in Walter v. United States, 447 U.S. 649, 100 S.Ct. 2395, 65 L.Ed.2d 410 (1980), that federal agents violated the Fourth Amendment by viewing reels of defendants’ 8-millimeter films without a warrant, despite the fact that the agents had come into possession of the films lawfully. If a magnetic stripe card is a digital storage device, albeit one whose storage capacity is limited, see United States v. Bah, 794 F.3d 617, 633 (6th Cir. 2015) (noting that according to defendant magnetic stripes could hold 79 alphanumeric characters and 147 numbers), reading the data on it is a Fourth Amendment search. Accessing the data on the stripe would simply be a special case of the general rule that reading a digital storage device constitutes a Fourth Amendment search.
In coming to the opposite conclusion, the court relies in large part on the fact that “[i]n the normal course” the information on the magnetic stripe is identical to the information embossed on the front of the card and there can be no reasonable expectation of privacy in information that is in plain view. Ante at 432. It also points out that the magnetic stripes on the cards seized from Briere contained only zeroes or stolen credit card information, and concludes that Briere could not have had an expectation of privacy in nonexistent or fraudulent information.
*435 The problem with this approach is that it is only possible to determine whether the information on the magnetic stripe is blank or matches the information embossed on the front of the card by scanning the magnetic stripe to determine its contents. And the results of a search cannot be used to justify its legality. See United States v. Jacobsen, 466 U.S. 109, 114 & n. 9, 104 S.Ct. 1652, 80 L.Ed.2d 85 (1984) (collecting eases); United States v. Di Re, 382 U.S. 581, 595, 68 S.Ct. 222, 92 L.Ed. 210 (1948) (“We have had frequent occasion to point out that a search is not to be made legal by what it turns up. In law it is good or bad when it starts and does not change character from its success.”). If a search could be justified by what it yields, the exclusionary rule would have no effect:
Obviously the word “legitimate” in the phrase “legitimate expectation of privacy” is being used in a special sense.... The cases must be analyzed on the hypothesis that no illegal activity is occurring or contemplated. The illegality comes to light only through [the search] whose validity is the very point at issue. Otherwise Fourth Amendment analysis would be pointless, because motions to suppress are never made in the first place unless evidence of criminality has been seized.
United States v. Little, 735 F.2d 1049, 1052 (8th Cir.) (R. Arnold, J.), modified on reh’g on other grounds sub nom. United States v. Sager, 743 F.2d 1261 (8th Cir. 1984). If a law enforcement officer opened a briefcase to find it empty or full of contraband, that officer conducted a Fourth Amendment search no less than if the briefcase contained legitimate papers. See United States v. Ross, 456 U.S. 798, 822-23, 102 S.Ct. 2157, 72 L.Ed.2d 572 (1982) (“[T]he Fourth Amendment provides protection to the owner of every container that conceals its contents from plain view.”); United States v. Knight, 306 F.3d 534, 536 (8th Cir. 2002).
If information on the magnetic stripe can be modified by the cardholder, it is obviously possible (though perhaps not common) to rewrite that information in a lawful manner. It would not be illegal, for example, for a cardholder to rewrite the data on the magnetic stripe of a card she had no more use for to “MYBANKAC-COUNTPASSWORDIS78911Y783,” so that she could recover her password in the event she forgot it. This fact distinguishes the present case from Illinois v. Caballes, which held that canine drug-detection sniffs are not Fourth Amendment searches, because they reveal either nothing at all or the presence of illegal drugs. 543 U.S. 405, 409, 125 S.Ct. 834, 160 L.Ed.2d 842 (2005) (explaining that “a canine sniff by a well-trained narcotics-detection dog [is] ‘sui generis’ because it ‘discloses only the presence or absence of narcotics, a contraband item.’ ” (quoting United States v. Place, 462 U.S. 696, 707, 103 S.Ct. 2637, 77 L.Ed.2d 110 (1983))). If there is no technological barrier to either the card issuer or the card holder placing arbitrary and potentially private (and innocent) data on the card, the same dichotomy does not apply to magnetic stripes.
It may well be the case that few people rewrite the information on the magnetic stripes of their cards for innocent purposes, though no evidence was developed on this point at the district court.[8] But that *436 does not change the result under the Fourth Amendment. This court has held that individuals have a reasonable expectation of privacy even in so-called single-purpose containers, “those rare containers” whose “distinctive configuration ... proclaims [their] content.” United States v. Banks, 514 F.3d 769, 774 (8th Cir. 2008) (second alteration in original) (quoting Texas v. Brown, 460 U.S. 730, 750-51, 103 S.Ct. 1535, 75 L.Ed.2d 502 (1983) (Stevens, J., concurring in the judgment), and Robbins v. California, 453 U.S. 420, 427, 101 S.Ct. 2841, 69 L.Ed.2d 744 (1981), overruled on other grounds by United States v. Ross, 456 U.S. 798, 102 S.Ct. 2157, 72 L.Ed.2d 572 (1982)). The examples of single-purpose containers given in Banks— cereal boxes, guitar bags, gun cases, and the like — make it clear that the category includes containers that could (but usually do not) contain items other than what might be inferred from the container itself. See 514 F.3d at 774; United States v. Meada, 408 F.3d 14, 24 (1st Cir. 2005); see also United States v. Soto, 988 F.2d 1548, 1553-54 (10th Cir. 1993) (holding defendant had reasonable expectation of privacy in secret compartment of car even though “secret compartments are most often used to conceal narcotics, weapons, or large amounts of cash”). Just as there is a reasonable expectation of privacy in the contents of cereal boxes, despite the fact that most people store nothing more than cereal in them, the Fourth Amendment applies to the contents of magnetic stripes, despite the likelihood that most people don’t change or modify in any way the account information stored there by default.[9]
Although the stakes may appear small at this stage, technological progress has a way of ensuring that they do not remain so. The Supreme Court has instructed that “the rule we adopt must take account of more sophisticated systems that are already in use or in development.” Kyllo, 533 U.S. at 36, 121 S.Ct. 2038. What advances are likely to be made in this area is a topic that deserves further factual development by the district court, especially because the available evidence suggests that the amount of information storable on a credit card will not long be numbered in the dozens of characters. Already many newly-issued credit cards in the United States contain chips that have a storage capacity much greater than that of the old magnetic stripes. See Rachel Abrams, Chip Cards Will Require Users to Dip Rather Than Swipe, N.Y. Times (Sept. 28, 2015), http:// nyti.ms/lVn2wdm; EMVCo, About EMV, https://www.emvco.com/abouUemv.aspx [https://perma.cc/4VL6-TF4T] (last visited May 31, 2016) (website of creator of chip card standard noting they store “considerably more information than magnetic stripe cards”). As cards are able to store more information, the privacy interests they implicate increase. If higher-capacity cards are in our future, with the ability for the cardholder to modify what they store for their own private use, any line we could attempt to draw between the cards at issue in this case and those of the future would necessarily be arbitrary.
*437 Because I think that resolution of Bri-ere’s motion requires more factual development, I would remand this case to the district court for that purpose. For this reason, I respectfully dissent.

. I recognize the difficult position in which the district court found itself, faced with a motion to suppress almost on the eve of trial. The district court would have been within its rights to deny the motion as untimely. In a commendable effort to grant the defendant a full opportunity to present his defense, the district court instead excused the delinquency of the motion and decided it on the merits. Although I recognize that the district court’s decision not to hold an evidentiary hearing is reviewed deferentially, United States v. Hill, 750 F.3d 982, 986 (8th Cir. 2014), I believe an evidentiary hearing is necessary to resolve this case.

. I abbreviate Eric-Arnaud Benjamin Briere de L’lsle’s name as Briere, the short form that he used on a number of the cards, and that the government used in its brief and the affidavit attached to the criminal complaint.

. The court holds, on the contrary, that Briere did not have a subjective expectation of privacy in the contents of the magnetic stripes. But “whether [Briere] had a subjective expectation of privacy is a question of fact, which this court reviews for clear error.” United States v. Long, 797 F.3d 558, 564-65 (8th Cir. 2015) (quotation marks omitted). To the extent the district court's statement, quoted above, represents a factual finding that Briere had a subjective expectation of privacy in the contents of the magnetic stripe, it was not clearly erroneous; to the extent the district court made no finding on this point, there is no clear record to justify appellate factfinding in the first instance. What the court calls "the purpose of a credit, debit, or gift card” (presumably meaning the purpose the issuing institution intended for the card), ante at 432, does not bear on Briere's own subjective beliefs about the card.

. The court cites trial testimony from United States Secret Service Agent Nicholas Wadding, ante at 432, but Wadding was explaining why someone would re-encode the magnetic stripe on a gift card with an unrelated credit card number, not how common it is to re-encode magnetic stripes for lawful purposes. It is unclear how the latter question could be answered solely on the basis of law enforcement experience of the sort Wadding *436 possessed; it would likely require a survey or similar investigation.

. It is true that the expectation of privacy in single-purpose containers is a diminished one that permits warrantless searches upon a showing of probable cause to seize the container. Banks, 514 F.3d at 774. This "single-purpose container exception” to the warrant requirement, however, does not apply here because to the extent probable cause existed to seize the cards found in Briere's trunk, it was probable cause to believe that the magnetic stripes did not contain what the "container” implied, namely, the account information embossed on the front of the card.